En el Tribunal Supremo de Puerto Rico

| El Pueblo de Puerto Rico<br>     Recurrido<br><br>     V.<br><br>Víctor González Vega<br><br>     Peticionario | Certiorari<br><br>99TSPR21 |
|---|---|

Número del Caso: CC-97-126

Abogados de la Parte Peticionaria: Lic. Luis A. Pérez Bonilla
Lic. James Reyes Figueroa
(Sociedad Para Asistencia Legal)

Abogados de la Parte Recurrida: Hon. Carlos Lugo Fiol
Procurador General

Lic. Eunice Amaro Garay
Procuradora General Auxiliar

Abogados de la Parte Interventora:

Tribunal de Instancia: Superior, Sala de Caguas

Juez del Tribunal de Primera Instancia: Hon. Carmen Vargas Medina

Tribunal de circuito de Apelaciones: Circuito Regional VI

Panel Integrado por:  Pres. Juez Brau Ramírez, la Juez Pesante Martínez y el Juez Rivera Pérez

Juez Ponente: Hon. Brau Ramírez

Fecha: 3/16/1999

Materia:

       Este documento constituye un documento oficial del Tribunal
       Supremo que está sujeto a los cambios y correciones del
       proceso de compilación y publicación oficial de las
       decisiones del Tribunal. Su distribución electrónica se hace
       como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

     Recurrido

         v.

Víctor González Vega                 CC-97-126       Certiorari

     Peticionario

Opinión del Tribunal emitida por el Juez Presidente señor ANDRÉU GARCÍA

San Juan, Puerto Rico, a 16 de marzo de 1999

Se impugna en el presente recurso una sentencia del Tribunal de Circuito de Apelaciones mediante la cual ese foro revocó una resolución dictada por el Tribunal de Primera Instancia que desestimó una acusación por el delito de fuga. Revocamos.

I

El 19 de octubre de 1994, el peticionario, Víctor González Vega, fue sentenciado por dos (2) cargos del delito de posesión de una sustancia controlada, tipificado en el inciso (a) del

artículo 404 de la Ley de Sustancias Controladas de Puerto Rico, 24 L.P.R.A. § 2404 (Supl. 1997). El tribunal le impuso una pena de reclusión de tres (3) años por cada uno de los cargos y determinó que debía cumplirlas concurrentemente entre sí y consecutivamente con cualesquiera otras sentencias que estuviera cumpliendo.

Posteriormente, el peticionario fue excarcelado y referido al Programa de Supervisión Electrónica de la Administración de Corrección, permitiéndosele así continuar extinguiendo su condena desde su residencia, sujeto al uso de un brazalete electrónico[1]. Mientras disfrutaba de este privilegio fue evaluado por la Administración de Servicios de Salud Mental y Contra la Adicción (ASSMCA). Esta agencia recomendó que se le internara en una institución para recibir tratamiento. El peticionario fue ingresado en una de las facilidades de Hogares CREA.

El 20 de marzo de 1996, el peticionario abandonó la facilidad, pero fue arrestado poco después. Por estos hechos fue acusado del delito de fuga. Véase, Cód. Penal de P.R., art. 232, 33 L.P.R.A. § 4428 (1983 y Supl. 1997). El peticionario solicitó la desestimación del pliego acusatorio bajo el inciso (a) de la Regla 64 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, R.64(a) (1991), alegando que los hechos que se le imputaban no eran constitutivos del delito de fuga. En una escueta resolución, el tribunal de instancia declaró con lugar la solicitud y desestimó la acusación. Concluyó que:

> Según la prueba estipulada por las partes entendemos que el acusado no estaba sometido a reclusión según lo tipifica el Artículo 232[,] ya que no estaba bajo "custodia legal" al momento de abandonar el Hogar Crea al cual fue referido por recomendación de la Administración de Servicios de Salud Mental y contra la Adicción. El acusado ... fue puesto en libertad por la Administración de Corrección mediante el Programa de Supervisión Electrónica para que continuara extinguiendo su condena. El hecho de que [...] haya sido referido a recibir tratamiento interno no significa que está bajo custodia legal; máxim[e] cuando la referida condición, o

---

[1] Hay que advertir que el peticionario fue referido a este programa en virtud de una determinación administrativa de la Administración de Corrección.

sea[,] el tratamiento interno, se cumplirá en una institución privada[2].

Pueblo v. González Vega, Criminal Núm. EFJ96G0007, resolución de 28 de octubre de 1996, en las págs. 2-3.

De este dictamen recurrió el ministerio público ante el Tribunal de Circuito de Apelaciones. Ese foro revocó la resolución recurrida al concluir, luego de analizar las disposiciones del artículo 232 del Código Penal, según enmendado[3], 33 L.P.R.A. § 4428 (Supl. 1997), que:

> [S]i se considera constitutiva del delito de fuga la evasión de una persona sometida a tratamiento en los Hogares CREA mediante un programa de desvío bajo la Regla 247.1 de Procedimiento Criminal o el art. 404(b) de la Ley de Sustancias Controladas, donde no ha mediado sentencia, a fortiori ha de llegarse al mismo resultado, en cuanto a una persona, ya condenada a pena de cárcel, que ha sido referida a dicho Programa mediante una determinación administrativa de la Administración de Corrección, bajo el Programa de Supervisión Electrónica.

Pueblo v. González Vega, Núm. KLCE9601186, sentencia de 30 de enero de 1997, en la pág. 10.

Inconforme, González Vega acudió ante esta Corte. El 20 de marzo de 1997, dictamos una resolución ordenándole al Pueblo mostrar causa por la cual no debíamos expedir el auto solicitado y revocar el dictamen recurrido. Así lo hizo. Con el beneficio de la comparecencia de todas las partes, procedemos a resolver según lo intimado.

II

Mediante el Memorando Normativo Núm. OA-PC-89-08 de 15 de abril de 1992, la Administración de Corrección (en lo sucesivo, la "Administración") estableció un programa voluntario para permitirles a ciertos confinados cumplir sus sentencias fuera de una institución penal, en sus residencias, bajo supervisión electrónica. La

---

[2] El tribunal de instancia apoyó su determinación en nuestras decisiones en Pueblo v. Figueroa Garriga, op. de 8 de marzo de 1996, 96 J.T.S. 31, y Rivera v. Delgado, 82 D.P.R. 692 (1961).

[3] El artículo 232 fue enmendado por la Ley Núm. 7 de 17 de abril de 1995, con el propósito de tipificar como fuga la evasión de la persona "sometida a tratamiento y rehabilitación en un programa del Estado Libre Asociado de Puerto Rico, o privado, supervisado y licenciado por una agencia del mismo conforme a un procedimiento especial de desvío bajo la Regla 247.1 de Procedimiento Criminal... o... [el inciso (b) del artículo 404 de la Ley de Sustancias Controladas]...". 33 L.P.R.A. § 4428 (Supl. 1997).

implantación de este programa formó parte de los esfuerzos del Gobierno de Puerto Rico por diseñar alternativas de tratamiento que ayuden a descongestionar las instituciones penales del país y, a la vez, contribuir a la rehabilitación de las personas convictas de delito. Véase, Memorando Normativo Núm. OA-PC-89-08, introducción, en las págs. 1-2. El programa se rige actualmente por el Reglamento para Establecer el Procedimiento para el Programa de Supervisión Electrónica, Reglamento Núm. 5065 de 4 de mayo de 1994 (en lo sucesivo, "REPPSE"), el cual derogó el Memorando Normativo Núm. OA-PC-89-08. Véase, REPPSE, art. XIII. La supervisión electrónica de los participantes se realiza a través de un brazalete electrónico. Véase, REPPSE, art. V (monitoría electrónica).

El REPPSE establece, entre otras cosas, los criterios de selección (art. VI), las funciones del director del programa (art. VII) y los procedimientos para la selección de los candidatos, la orientación e integración de los participantes y la revocación del privilegio (art. VIII). Entre las disposiciones generales se establece que "[e]l Participante del Programa no podrá abandonar su hogar ni remover el Brazalete Electrónico bajo ninguna circunstancia, de así hacerlo será procesado por fuga e interrumpirá el término para continuar cumpliendo sentencia". REPPSE, art. X(A) (énfasis suplido). Al consignar que el participante será "procesado" por fuga, no obstante, esta disposición no tipifica delito alguno, sino que reitera lo establecido en el artículo VIII respecto al procedimiento a seguir cuando el participante abandona el programa. El artículo VIII establece que cuando un participante desaparezca, el superintendente de la institución penal de origen deberá radicar una acusación por el delito de fuga tipificado en el artículo 232 del Código Penal. Véase, REPPSE, art. V(D)(5). Nos corresponde determinar, por lo tanto, si el peticionario incurrió en el delito de fuga según establecido en el Código Penal.

III

De acuerdo con el artículo 232 del Código Penal, comete el delito de fuga "[t]oda persona sometida legalmente a detención preventiva, sometida a tratamiento y rehabilitación en un programa del Estado Libre Asociado de Puerto Rico, o privado, supervisado y licenciado por una agencia del mismo conforme a un procedimiento especial de desvío bajo la Regla 247.1 de Procedimiento Criminal... o ... [el inciso (b) del artículo 404 de la Ley de Sustancias Controladas], sometida legalmente a reclusión o a medida de seguridad de internación, que se fugare...". 33 L.P.R.A. § 4428 (Supl. 1997).

En Rivera v. Delgado, 82 D.P.R. 692, 695 (1961), resolvimos, al interpretar el artículo 152 del Código Penal de 1937, vigente entonces, que "[l]a fuga de la custodia legal, mas bien que la fuga de un sitio de confinamiento, es lo que constituye la esencia del delito". Esta interpretación la reiteramos posteriormente en nuestras decisiones en Pueblo v. Ríos Dávila, op. de 30 de junio de 1997, 97 J.T.S. 108, en la pág. 1315, y Pueblo v. Figueroa Garriga, op. de 8 de marzo de 1996, 96 J.T.S. 31, en la pág. 772.

El alcance de nuestros pronunciamientos en Rivera v. Delgado, supra, sin embargo, se debe entender limitado por la figura del delito de fuga prevista en el artículo 232 del Código Penal vigente. La declaración en Rivera v. Delgado, supra, en la pág. 695, antes transcrita, estuvo basada en el texto del artículo 152 del Código Penal de 1937: "Toda persona bajo custodia legal que se fugare mientras estuviere en prisión preventiva, o en trámite de apelación, o cumpliendo sentencia será castigada por orden sumaria del Tribunal Superior de Puerto Rico..."[4].

Sin embargo, el texto del artículo 232 del Código Penal vigente no justifica la interpretación de que "[l]a fuga de la custodia legal, mas bien que la fuga de un sitio de confinamiento, es lo que constituye la esencia del delito". Presumiendo la corrección del uso del término

---

[4] Transcribimos esta disposición según citada en Rivera v. Delgado, supra, en la pág. 694.

"custodia legal" al hacer referencia al artículo 232, el injusto penal no ocurre con la evasión de cualquier custodia legal, sino, conforme con el principio de legalidad[5], con la evasión de la custodia legal <u>prevista específicamente en la descripción literal del tipo establecido en el artículo 232</u>.

Así pues, para que una conducta sea punible como fuga, se requiere que el sujeto activo se evada mientras se halla sometido legalmente (1) a detención preventiva, (2) a reclusión – cumpliendo sentencia firme o en trámite de apelación[6] –, o (3) a medida de seguridad de internación, o sometido (4) a tratamiento y rehabilitación en un programa del Estado Libre Asociado, conforme a un procedimiento especial de desvío bajo la Regla 247.1 de Procedimiento Criminal, (5) a tratamiento y rehabilitación en un programa privado, supervisado y licenciado por una agencia del Estado Libre Asociado, conforme a un procedimiento especial de desvío bajo la Regla 247.1 de Procedimiento Criminal, (6) a tratamiento y rehabilitación en un programa del Estado Libre Asociado, conforme a un procedimiento especial de desvío bajo el inciso (b) del artículo 404 de la Ley de Sustancias Controladas, o (7) a tratamiento y rehabilitación en un programa privado, supervisado y licenciado por una agencia del Estado Libre Asociado, conforme a un procedimiento especial de desvío bajo el inciso (b) del artículo 404 de la Ley de Sustancias Controladas.

De acuerdo con los hechos estipulados en este caso, el peticionario se encontraba cumpliendo una sentencia de reclusión en su residencia bajo el Programa de Supervisión Electrónica de la Administración de Corrección. Fue internado posteriormente –

---

[5] El principio de legalidad, como se sabe, se basa en el aforismo "nullum crimen, nulla poena sine lege", y está recogido en los artículos 8 y 9 de nuestro Código Penal, 33 L.P.R.A. §§ 3031, 3041 (1983), respectivamente, particularmente en el artículo 8. <u>Véanse además</u>, <u>Pueblo</u> v. <u>Figueroa Garriga</u>, <u>supra</u>, en la pág. 771; <u>Pueblo</u> v. <u>Ríos Nogueras</u>, 114 D.P.R. 256, 260 (1983).

[6] Véase al respecto los incisos (d) y (e) del artículo 232 del Código Penal, 33 L.P.R.A. § 4428(d),(e) (Supl. 1997).

presumiblemente mientras durara el tratamiento de rehabilitación – en una facilidad de Hogares CREA.

El peticionario no se encontraba sometido legalmente a detención preventiva. Como se sabe, el término "detención preventiva" se refiere al período anterior al juicio, "en el cual el acusado se encuentra, por razón de no haber podido prestar la fianza impuesta, 'sumariado' en espera de que se le celebre el correspondiente proceso criminal". Pueblo v. Figueroa Garriga, supra, en la pág. 772. No se encontraba sometido legalmente a una medida de seguridad de internación, ya que este término se refiere a las medidas de seguridad impuestas a los incapacitados mentalmente, a los alcohólicos y toxicómanos y a los delincuentes sexuales peligrosos, compulsivos y habituales. Véanse, Cód. Penal de P.R., arts. 70-74, respectivamente, 33 L.P.R.A. §§ 3371-3375 (1983); Pueblo v. Figueroa Garriga, supra, en la pág. 772.

El peticionario tampoco se encontraba sometido a tratamiento y rehabilitación bajo un procedimiento especial de desvío conforme a la Regla 247.1 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, R.247.1 (1983 y Supl. 1997), o bajo el inciso (b) del artículo 404 de la Ley de Sustancias Controladas, 24 L.P.R.A. § 2404(b) (Supl. 1997). En este sentido, el Tribunal de Circuito incidió al resolver que, "si se considera constitutiva del delito de fuga la evasión de una persona sometida a tratamiento en los Hogares CREA mediante un programa de desvío bajo la Regla 247.1 de Procedimiento Criminal o el art. 404(b) de la Ley de Sustancias Controladas, donde no ha mediado sentencia", por analogía, "ha de llegarse al mismo resultado, en cuanto a una persona, ya condenada a pena de cárcel, que ha sido referida a dicho Programa mediante una determinación administrativa de la Administración de Corrección, bajo el Programa de Supervisión Electrónica". Pueblo v. González Vega, Núm. KLCE9601186, sentencia de 30 de enero de 1997, en la pág. 10.

El principio de legalidad no sólo impide el inicio de una acción penal contra una persona por un hecho que no está expresamente definido

por la ley como delito, sino también la creación de delitos por analogía. Véase, Cód. Penal de P.R., art. 8, 33 L.P.R.A. § 3031 (1983). La determinación del Tribunal de Circuito no constituyó una interpretación extensiva del artículo 232 del Código Penal, la cual es permitida, sino una interpretación analógica de la ley penal, la cual está prohibida si, como en este caso, perjudica al reo. Véase, Pueblo v. Sierra Rodríguez, op. de 8 de febrero de 1995, 95 J.T.S. 11, en la pág. 609. Es decir, la interpretación que hizo el Tribunal de Circuito no significó la "búsqueda de un sentido del texto legal que se ha[llara] dentro de su *sentido literal posible*'", sino que supuso "la aplicación de la ley penal a un supuesto no *comprendido* en ninguno de los sentidos posibles de su letra, sino análogo a otro sí comprendido[] en el texto legal". Santiago Mir Puig, Derecho penal ¶ 40, en la pág. 86 (4a ed. 1996) (escolio omitido).

La determinación del Circuito de Apelaciones, por lo tanto, violentó el principio de legalidad. Ello, sin embargo, no dispone del presente recurso, ya que, según hemos sostenido reiteradamente, "la revisión se da contra la sentencia y no sus fundamentos". Sánchez v. Eastern Air Lines, Inc., 114 D.P.R. 691, 695 (1983) (citas omitidas). Puesto que cuando abandonó el Hogar CREA donde recibía tratamiento el peticionario no se hallaba ni sometido legalmente a detención preventiva ni a medida de seguridad de internación, ni sometido a tratamiento de rehabilitación en una institución pública o privada, conforme a un procedimiento especial de desvío bajo la Regla 247.1 de Procedimiento Criminal o el inciso (b) del artículo 404 de la Ley de Sustancias Controladas, sólo resta determinar si cometió el delito de fuga por haberse evadido mientras se encontraba sometido legalmente a reclusión.

III

A.

El artículo 40 del Código Penal define "pena de reclusión" como "la privación de libertad en la institución adecuada durante el tiempo señalado en la sentencia". 33 L.P.R.A. § 3202 (1983). Consecuentemente, para determinar si una persona se encuentra sometida jurídicamente a reclusión, es preciso que su circunstancia reúna tres elementos esenciales: (1) privación de libertad, (2) en una institución adecuada, (3) en virtud de sentencia. Véase, Pueblo v. Ríos Dávila, supra, en la pág. 1315.

En este caso, el peticionario se encontraba cumpliendo una pena de reclusión impuesta mediante sentencia judicial. No debe haber duda, por lo tanto, de que su libertad estaba restringida. El problema que se plantea, no obstante, es si el peticionario se encontraba recluido en una "institución adecuada" cuando se evadió.

En este caso, el peticionario fue sentenciado a cumplir una pena de reclusión. Luego, sin embargo, la Administración de Corrección le permitió egresar de la institución penal donde fue recluido, para que, sujeto a supervisión electrónica, continuara extinguiendo la condena en su hogar. Con la egresión de la institución penal, por lo tanto, cesó la reclusión del peticionario[7]. El ingreso de éste en Hogares CREA, en este caso, no cambia esta circunstancia. El legislador no previó como un hecho penalmente antijurídico que una persona que se encuentra extinguiendo una condena sujeta a supervisión electrónica abandone una institución pública o privada en la que se encuentra recibiendo tratamiento de rehabilitación. El legislador sólo previó como conducta punible la evasión de una institución pública o privada que ofrece tratamiento de rehabilitación, cuando el sujeto activo está sometido a los mecanismos de desvío bajo la Regla 247.1 de Procedimiento Criminal, o el inciso (b) del artículo 404 de la Ley de Sustancias Controladas. De este modo, los hechos del presente caso no pueden enmarcarse dentro

---

[7] Ciertamente el hogar del peticionario no es una institución, ni en el contexto del artículo 40 del Código Penal ni "según el contexto y el significado sancionado por el uso común y corriente". Véase, 33 L.P.R.A. §§ 3202, 3021 (1983), respectivamente.

de las circunstancias contempladas por el legislador como configuradoras del delito de fuga tipificado en el Art. 232 del Código Penal de Puerto Rico.

B.

Por otro lado, tampoco hemos encontrado que alguna otra disposición de ley haya tipificado como delito la conducta desplegada por González Vega. La Ley Orgánica de la Administración de Corrección tan sólo confirió a esta entidad la facultad de aprobar la reglamentación necesaria para regular y administrar los programas de supervisión electrónica. Véase, 4 L.P.R.A. sec. 1112 (e). De conformidad con dicha delegación, la Administración de Corrección aprobó el REPPSE, supra, el cual dispuso en el Art. X(a), lo siguiente:

> El Participante del Programa no podrá abandonar su hogar ni remover el Brazalete Electrónico bajo ninguna circunstancia, de así hacerlo será procesado por fuga e interrumpirá el término para continuar cumpliendo la sentencia.

Además, el Art. VIII (D) del mismo reglamento regula el procedimiento para la radicación de acusaciones por fuga cuando un participante del programa lo abandona.

Ahora bien, ¿incorpora el Art. X(a) de dicho reglamento nuevos elementos al delito de fuga? La respuesta a esta pregunta supone resolver una interrogante de umbral: ¿puede la Administración de Corrección crear un delito mediante reglamentación?

Algunos tribunales de otras jurisdicciones han reconocido como válida cierta injerencia por parte de las agencias administrativas en la formulación del derecho penal sustantivo. Por un lado, se ha reconocido que las legislaturas pueden delegar a entidades administrativas el poder de aprobar reglamentos sobre distintas materias, cuya violación sea considerada como un delito. Sin embargo, para que tal delegación sea ejercida válidamente y no entre en conflicto con el principio de separación de poderes, los tribunales han exigido que exista una autorización legislativa que faculte a la agencia a promulgar reglamentos al respecto, que el estatuto que

confiere la facultad contenga estándares que guíen a la agencia al formularlos, que el propio estatuto establezca que la violación del reglamento que la agencia promulgue constituirá un delito y, que, además, defina las penas aplicables. Yakus v. U.S., 321 U.S. 414 (1944); U.S. v. Grimaud, 220 U.S. 506 (1911). Véanse, 1 Wayne R. LaFave y Austin W. Scott Jr. Substantive Criminal Law sec. 2.6 (1986); 1 Kenneth Culp Davis, Administrative Law Treatise Sec. 3.11 (1978).

Por otro lado, también se ha reconocido como válido delegar a la Rama Ejecutiva la responsabilidad de cubrir ciertos aspectos de un estatuto penal. Así por ejemplo, se ha señalado que el Congreso puede delegar al Presidente de Estados Unidos la facultad de establecer agravantes que permitan la imposición de cierto tipo de penalidades, Loving v. U.S., 517 U.S. 748 (1996); y que las legislaturas pueden declarar ilegal la posesión de sustancias controladas y, a su vez, conferir a una agencia administrativa la facultad de establecer qué sustancias estarán comprendidas en esa clasificación. State v. King, 257 N.W.2d 693 (Minn. 1977); 1 LaFave y Scott, supra, a la pág. 156. Claro está, el ejercicio del poder delegado no puede apartarse de los parámetros del estatuto.

En el caso de autos, estimamos que no es necesario resolver si en nuestra jurisdicción la Legislatura puede delegar válidamente a una agencia administrativa la facultad de aprobar reglamentos cuya violación sea considerada como un delito. En primer lugar, aún si asumiéramos que en Puerto Rico es válida una delegación de poderes de esa naturaleza, cosa que hoy no resolvemos, nuestra evaluación de la Ley Orgánica de la Administración de Corrección que, entre otras cosas, autorizó a dicha agencia a elaborar programas de supervisión electrónica, revela que no existe una autorización de la Legislatura al respecto, y por tanto, tampoco existen estándares o guías que limiten el ejercicio de esa facultad y que, conforme a jurisprudencia de otras jurisdicciones, le impriman validez a esa gestión.

En este sentido, el Art. 5 de la Ley Orgánica, en lo pertinente señala:

> Asimismo, [la Administración] formulará [...] la reglamentación necesaria para establecer programas de supervisión electrónica, mediante los cuales la clientela del sistema que cualifique para ello y voluntariamente acepte participar, pueda cumplir la sentencia fuera de la institución penal. El reglamento establecerá los criterios, condiciones y requisitos de elegibilidad para dichos programas y para revocar la participación en los mismos, cumpliendo con el debido proceso de ley. [...]. 4 L.P.R.A. sec. 1112 (e).[8]

Como puede apreciarse, este artículo no contiene disposición alguna de la cual pueda inferirse la intención expresa de la Asamblea Legislativa de que la Administración de Corrección participe en la formulación de derecho penal substantivo. En este sentido, no expresa que la violación de la reglamentación que apruebe la Administración de Corrección para regular el programa de supervisión electrónica constituirá delito. De este modo, forzoso es concluir que la disposición del Art. X(a) del REPPSE de la Administración de Corrección no constituye fuente de derecho que permita concluir que en el caso de autos González Vega cometió el delito de fuga.

En segundo lugar, y en armonía con lo anterior, nuestra lectura de la disposición reglamentaria citada nos convence de que la misma tan sólo advierte a los participantes del programa que ante su incumplimiento con las condiciones del programa --abandonar su hogar o remover el brazalete electrónico-- la Administración de Corrección iniciará un procedimiento judicial por el delito de fuga. No se trata de una disposición reglamentaria que añade nuevos elementos al delito que está tipificado en el Art. 232 del Código Penal. En vista de ello,

---

[8] Véase además, 4 L.P.R.A. sec. 1112(m), que dispone como una de las facultades de la Administración de Corrección:

> Administrar los servicios que requieren los clientes en los programas de supervisión electrónica, en libertad a prueba o bajo las medidas de seguridad y estén en libertad bajo palabra que estén bajo la custodia y supervisión de la Administración, tomando en consideración, además, las condiciones impuestas por la Junta de Libertad Bajo Palabra o los términos de la sentencia o medidas de seguridad impuestas por el tribunal según sea el caso. [...].

la referencia al posible encausamiento de las personas por violar las condiciones impuestas como parte del programa de supervisión electrónica sólo puede darse en el contexto de los elementos del delito de fuga del Art. 232 del Código Penal, que, como señalamos anteriormente, no contempla los hechos específicos en el caso de autos como una de sus modalidades.

IV.

No albergamos duda, sin embargo, de que la conducta desplegada por González Vega constituye un incumplimiento con las condiciones del programa al cual fue referido por la Administración de Corrección. Sin embargo, constituye una situación no contemplada por el Código Penal como constitutiva del delito de fuga.

El principio de legalidad nos impide iniciar un ejercicio de hermenéutica que tenga el efecto de forzar una interpretación en busca de similitudes entre la conducta de González Vega y las conductas expresamente prohibidas en el Código Penal. No es posible, por lo tanto, acudir a un "análisis comparativo" o "analógico" para establecer semejanzas entre conductas o circunstancias contempladas en el Código Penal, y hechos específicos y concretos, sin el cual difícilmente pueden satisfacerse los elementos de un delito. Realizar tal ejercicio aduciendo que al hacerlo no se viola el principio de legalidad, sería en efecto dotar a dicho principio de una elasticidad que para todos los propósitos frustra su finalidad.

Se emitirá la correspondiente sentencia revocatoria.

José A. Andréu García
Juez Presidente

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


El Pueblo de Puerto Rico


    Recurrido


      v.                   CC-97-126       Certiorari

Víctor González Vega


    Peticionario


SENTENCIA


San Juan, Puerto Rico a 16 de marzo de 1999


Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte integra de la presente, se expide el auto de certiorari solicitado y se revoca la Sentencia emitida por el Tribunal de Circuito de Apelaciones, Circuito Regional VI de Caguas-Humacao-Guayama, en el caso KLCE-96-01186.

Se ordena la desestimación de la acusación por violación al artículo 232 del Código Penal de Puerto Rico, presentada contra el peticionario.

Lo pronunció y manda el Tribunal y certifica la Secretaria del Tribunal Supremo. La Juez Asociada señora Naveira de Rodón emitió opinión de conformidad. El Juez Asociado señor Negrón García disintió con opinión escrita a la cual se unió el Juez Asociado señor Corrada del Río.


Isabel Llompart Zeno
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Recurrido

        v.

                        CC-97-126

Víctor González Vega

    Peticionario

Opinión de Conformidad emitida por la Juez Asociada señora Naveira de Rodón.

San Juan, Puerto Rico, a 16 de marzo de 1999

Aunque estamos conformes con la Opinión del Tribunal, consideramos conveniente ampliar brevemente lo resuelto en ésta.   En particular, lo relacionado al principio de legalidad y al alcance de la facultad de reglamentación de la Administración de Corrección.

I

El peticionario Víctor González Vega resultó convicto de dos (2) cargos por infracción al Art. 404 de la Ley de Sustancias Controladas de Puerto Rico (posesión de sustancias controladas).  Ley Núm. 4 de 23 de junio de 1971, según enmendada; 24 L.P.R.A. sec. 2404.  El 19 de octubre de 1994, el Tribunal de Primera Instancia, Sala Superior de Caguas, dictó una

sentencia mediante la cual lo condenó a tres (3) años de reclusión por cada uno de los cargos a ser cumplidos de forma concurrente y consecutivamente con cualquier sentencia que estuviera cumpliendo.

Así las cosas, y **en virtud de una determinación administrativa**, el peticionario fue **excarcelado** y referido al Programa de Supervisión Electrónica de la Administración de Corrección. Allí se le permitió cumplir su condena desde su residencia, sujeto al uso de un brazalete electrónico. Mientras gozaba de este privilegio, la Administración de Servicios de Salud Mental y Contra la Adicción (en adelante ASSMCA), **recomendó, como medida administrativa**, internarlo en una institución para que recibiera tratamiento. En consecuencia, el peticionario fue ingresado a una de las facilidades de los Hogares CREA.

Posteriormente, González Vega abandonó la institución, lo que conllevó que fuera arrestado y acusado por el delito de fuga. El tribunal de instancia desestimó la acusación. Sin embargo, el Tribunal de Circuito de Apelaciones, revocó a instancia ya que entendió que la conducta del peticionario sí configuró el delito de fuga.

II

El Art. 8 del Código Penal, 33 L.P.R.A. sec. 3044, el cual consagra en nuestra jurisdicción el principio de legalidad, garantiza tres (3) axiomas básicos: (i) el que una persona no pueda ser castigada por un hecho que no esté previamente definido por la ley como un delito; (ii) prohibe la imposición de penas o medidas de seguridad que no hayan sido establecidas previamente por ley; y (iii) la prohibición de los estatutos vagos.[9]

---

[9] Dicho artículo dispone que, "[n]o se instará acción penal contra persona alguna por un hecho que no esté expresamente definido por la ley como delito, ni se impondrán penas o medidas de seguridad que la ley no hubiere previamente establecido.

En virtud de este principio, es que analizamos si al amparo del Art. 232 de Código Penal, supra, el peticionario era una persona sometida legalmente a reclusión, al momento en que evadió las facilidades del Hogar CREA.

Para la fecha de los hechos,[10] alegadamente delictivos, el Art. 232 del Código Penal, 33 L.P.R.A. sec. 4428, disponía que cometía el delito de fuga:

> [t]oda persona sometida legalmente a detención preventiva, sometida a tratamiento y rehabilitación en un programa del Estado Libre Asociado de Puerto Rico, o privado, supervisado y licenciado por una agencia del mismo conforme a un procedimiento especial de desvío bajo la Regla 247.1 de Procedimiento Criminal, Ap. II del Título 34 o la sec. 2404(b) del Título 24, sometida legalmente a reclusión o medida de seguridad de internación, que se fugare,… .

En Pueblo v. Figueroa Garriga, supra, Op. de 8 de marzo de 1996, 140 D.P.R.____ (1996), 96 JTS 31, pág. 772, tuvimos la oportunidad de analizar la disposición legal transcrita. Allí dijimos que ésta contempla sólo tres (3) situaciones en las cuales una persona puede cometer el delito de fuga, mientras está sometida legalmente a: (1) detención preventiva, (se refiere al período de tiempo en el cual el acusado se encuentra, por razón de no haber podido prestar la fianza impuesta, "sumariado" es decir, en espera de que se le celebre el correspondiente proceso criminal); (2) medida de internación (agrupa aquellos delincuentes habituales, compulsivos, sexuales peligrosos o con incapacidad mental, entre otros); y (3) reclusión, (consiste en la privación de la libertad en la institución adecuada durante el tiempo señalado en la sentencia. Art. 4 del Código Penal, 33 L.P.R.A. sec. 3202).

---

No se podrán crear por analogía delitos, penas, ni medidas de seguridad."

[10] Los alegados hechos fueron cometidos el 20 de marzo de 1996.

Señalamos, además, que la ley, al utilizar el término "institución" se refiere a una de tipo carcelaria o penal de la Administración de Corrección de Puerto Rico y **no** a una de las localidades en las que operan y llevan a cabo su trabajo de rehabilitación, instituciones tales como los Hogares CREA.

La esencia del delito de fuga lo constituye la evasión o fuga, por parte de la persona que estaba sometido a la custodia legal. Pueblo v. Figueroa Garriga, supra. Véase, además, Rivera v. Delgado, 82 D.P.R. 693, 695 (1961).

En nuestro caso, para que se configure el delito de fuga, tendríamos que concluir que, mientras el peticionario se encontraba **excarcelado**, en efecto estaba en reclusión, porque, a **recomendación** de la ASSMCCA fue ingresado a un centro de tratamiento. Obviamente, lo anterior conllevaría a que por *fiat* judicial enmendáramos el Código Penal para considerar como elementos constitutivos de delito de fuga unos hechos que no fueron originalmente cubiertos por el estatuto. No debemos perder de vista que González Vega fue excarcelado bajo la condición de que utilizara un brazalete electrónico. Su ingreso a las facilidades de los Hogares CREA fue recomendada con el único fin de lograr su rehabilitación. No era una condición per se para concederle el privilegio de cumplir su sentencia fuera de una institución carcelaria.

Así pues, al no estar González Vega, al momento de abandonar las facilidades del Hogar CREA bajo detención preventiva, ni sujeto a medida de seguridad ni sometido legalmente a reclusión, no se configuró el delito de fuga. Este sí incurrió en violación a una de las condiciones especiales que le impusiera la Administración de Corrección, lo cual podría acarrear la revocación del privilegio de cumplir su sentencia fuera de una institución penal, pero no una acusación por el delito de fuga.

A tenor con el principio de legalidad, la decisión resuelve correctamente que el peticionario no cometió el delito de fuga cuando, después de su excarcelación, evadió las facilidades de los Hogares CREA para recibir tratamiento para su adicción.

Cabe entonces preguntarnos, la Administración de Corrección, tiene facultad para crear un delito mediante reglamentación. La respuesta es no.

III

La Administración de Corrección creó un programa en el cual se le permite a aquellos confinados que cualifiquen, extinguir su pena fuera de una institución carcelaria, en sus residencias, bajo supervisión electrónica. En virtud de la facultad conferida por el Art. 5 de la Ley Orgánica de la Administración, 4 L.P.R.A. sec. 1112, la Administración aprobó el Reglamento para Establecer el Procedimiento para el Programa de Supervisión Electrónica, Reglamento Núm. 5065 de 4 de mayo de 1994. Como parte de dicho Reglamento, específicamente, en su Art. X(a) dispuso, en lo pertinente, que si un participante en el programa abandona la institución en la cual se encuentra recluido, será procesado por el delito de fuga.[11]

Sabido es que en nuestro ordenamiento jurídico, la Asamblea Legislativa es la única que tiene la facultad exclusiva de tipificar los delitos e imponer castigos. Rodríguez Ródríguez v. E.L.A., 130 D.P.R. 562, 569 (1992). Véanse, además, Pueblo v. Martínez Torres, 116 D.P.R. 793, 796 (1986); y Pueblo v. Lucret Quiñones, 111 D.P.R. 716, 738 (1981). Dicha facultad está limitada solamente por los preceptos constitucionales. Rodríguez Rodríguez v. E.L.A., supra. Véanse, además, Pueblo v. Reyes

---

[11] Véase, además, el Art. VIII(D) del citado reglamento, el cual regula el procedimiento para la radicación de acusaciones por fuga cuando un participante del programa lo abandona.

Morán, 123 D.P.R. 786, 797 (1989); Pueblo v. Pérez Zayas, 116 D.P.R. 197 (1985).

Al evaluar la validez de una reglamentación de una agencia administrativa, la función de los tribunales debe ser encaminada a determinar si: (1) la actuación administrativa está autorizada por la ley; (2) se delegó poder de reglamentación; (3) la reglamentación promulgada está dentro de los amplios poderes delegados, (4) al aprobarse el reglamento se cumplió con las normas procesales de la ley orgánica y de las leyes especiales; y (5) la reglamentación es arbitraria o caprichosa. Carrero v. Depto. de Educación, Op. 30 de octubre de 1996, 141 D.P.R. ____ (1996), 96 JTS 141, pág. 273. Véanse, además, casos allí citados. Más importante aún, **"un reglamento para implantar la ejecución de un ley puede complementarla pero no estar en conflicto con ésta."** (Énfasis nuestro.) P.S.P. v. Comisión Estatal de Elecciones, 110 D.P.R. 400, 409 (1980). El interés protegido detrás de esta norma es velar porque la regla esté de acuerdo con las disposiciones estatutarias bajo las cuales se promulgó. Carrero v. Depto. de Educación, supra. De lo contrario, la disposición reglamentaria tiene que ceder ante el mandato legislativo. Díaz v. Srio. De Hacienda, 114 D.P.R. 850, 874, (1983). Véanse, además, A.P.I.A.U., Inc. v. Srio de Hacienda, 100 D.P.R. 173, 179 (1971); Rosario Mercado v. San Juan Racing Assn., 94 D.P.R. 634, 642 (1967).

A la luz de los principios antes esbozados, hemos analizado cuidadosa y desapasionadamente la Ley Orgánica de la Administración de Corrección. Dicho análisis nos lleva a la ineludible conclusión de que no existe autorización expresa por parte de la Asamblea Legislativa que le delegue válidamente la facultad de aprobar reglamentos cuya violación constituya un delito.

Es por ello que, con gran acierto, la opinión mayoritaria afirma, que la Asamblea legislativa no le confirió autoridad a la Administración de

Corrección para crear delitos mediante reglamento. Más aún, y como ya hemos visto, sin haber una base estatutaria legítima, el principio de legalidad impide que la agencia, mediante reglamentación, pretenda hacer delito la violaciones de sus disposiciones reglamentarias. Art. 8 del Código Penal, supra. Véanse, además: Carrero v. Depto. de Educación, supra; A.P.I.A.U., Inc. v. Srio. de Hacienda, supra; Díaz v. Srio. de Hacienda, supra.

Como bien suscribe la opinión del Tribunal, la conducta imputada a González Vega constituye un incumplimiento con las condiciones del programa al cual fue referido por la Administración. Tal conducta no configura el delito de fuga, sino que constituye una violación a una norma administrativa que a su vez podría conllevar, entre otras medidas administrativas, la revocación del privilegio. Véase, Art. 8C del Reglamento para Establecer el Procedimiento para el Programa de Supervisión Electrónica, supra. **Ciertamente, cualquier otra interpretación, sería contraria al principio de legalidad.**

Miriam Naveira de Rodón
Juez Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


El Pueblo de Puerto Rico

     Recurrido

                           CC-97-126     Certiorari

       v.

Víctor González Vega

     Peticionario


Opinión disidente del Juez Asociado señor Negrón García a la cual se
une el Juez Asociado señor Corrada del Río


San Juan, Puerto Rico, a 16 de marzo de 1999


I

Una prolija interpretación restrictiva del **principio de legalidad ("nulum crimen, sine lege")** -cimentada en una literalidad que mata el espíritu que impregna toda ley y en la visión arcaica de que la reclusión sólo se da en una prisión o cárcel rodeada de muros, verjas y vigilada por guardias-, ha llevado a la mayoría a erróneamente concluir que no comete **el delito de fuga**[12] el convicto que se

---

[12] En lo pertinente, el Art. 232 del Código Penal reza:

    "Toda persona sometida legalmente a detención preventiva, sometida a tratamiento y rehabilitación en un programa del Estado Libre Asociado de

evade del área específica y vigilancia a la cual la Administración de Corrección restringió efectivamente su libertad, en ocasión de autorizarle cumplir condena recluido en su residencia, **sujeto a un brazalete electrónico**, bajo el Programa de Supervisión Electrónica.[13]

Sabido es, que el importante **principio de legalidad** en la modalidad que nos ocupa, **prohibe que alguien pueda ser castigado por un hecho realizado no descrito en la ley**. Atado a la arquitectura constitucional clásica de poderes divididos –Ejecutivo, Legislativo y Judicial–, presupone que sólo la Asamblea Legislativa tiene esa prerrogativa, que a su vez representa una salvaguarda ciudadana contra posibles excesos y abusos del Estado y una garantía de seguridad jurídica.[14]

---

Puerto Rico, o privado, supervisado y licenciado por una agencia del mismo conforme a un procedimiento especial de desvío bajo la Regla 247.1 de Procedimiento Criminal, Ap. II del Título 34 o la sec. 2404(b) del Título 24, **sometida legalmente a reclusión** o a medida de seguridad de internación, **que se fugare** será sancionada conforme a las siguientes penas..."

[13] Víctor González Vega –convicto cumpliendo sentencia suspendida–, subsiguientemente se declaró culpable de violar el Art. 404(a) de la Ley de Sustancias Controladas. Fue condenado a tres (3) años de reclusión **consecutiva** con la condena previa. Perdió el beneficio de sentencia suspendida.

**La Administración de Corrección, quien tenía su custodia legal, le autorizó cumplir la pena en su residencia, sujeto a un brazalete bajo el Programa de Supervisión Electrónica.**

Así las cosas, tras arrojar positivo a un examen rutinario de dopaje, la Administración de Servicios de Salud Mental y Contra la Adicción ordenó su ingreso al Hogar Crea. **El 20 de marzo de 1996, rehusó entrar al edificio de dicha institución, alejándose de las facilidades. La Policía lo arrestó 15 minutos más tarde.**

Acusado del delito de fuga González Vega logró que el ilustrado Tribunal de Primera Instancia, Sala Superior de Caguas (Hon. Carmen Vargas Medina), desestimara, al entender que los hechos imputádoles no configuraban dicho delito pues disfrutaba de "libertad condicionada" y su internado al Hogar Crea no constituía custodia legal. El reputado Tribunal de Circuito de Apelaciones (Hons. Brau Ramírez, Pesante Martínez y Rivera Pérez), **revocó.**

[14] Para un estudio más a fondo del principio de legalidad, véase: F. Madrid Conesa, La Legalidad del Delito, Valencia, 1983, págs. 33 y ss.; R. Carranca y Trujillo, Derecho Penal Mexicano, Parte General, México, Editorial Porrua, S.A., 1976, págs. 163-178; C.E. Muñoz Pope, Lecciones de Derecho Penal, Parte General, 2da. ed., Panamá, 1987, Vol. I, págs. 158 y ss.; J. Cerezo Mir, Curso de Derecho Penal Español, Parte General, Madrid, Ed. Tecnos, 1976, págs. 154 y ss.; L.C. Pérez, Derecho

Sin embargo, no debemos confundir su alcance y desproporcionadamente llevarlo a extremos imposibles de realizar. **No podemos "exigi[r] un casuismo excesivo de las figuras delictivas y la utilización exclusiva de elementos descriptivos. Por grande que fuera el casuismo, que haría a los Códigos Penales sumamente farragosos, nunca podría el legislador comprender la rica variedad de los hechos que ofrece la vida real. Las figuras delictivas se forman, por ello, en virtud de un proceso de abstracción a partir de los hechos reales. No puede renunciar tampoco el legislador a utilizar elementos normativos (que implican la referencia a normas jurídicas, éticas, usos sociales, etc., y cuya apreciación exige un juicio valorativo por parte del juez) en la elaboración de las figuras delictivas... La descripción de las conductas delictivas ha de ser, sin embargo, lo suficientemente concreta para que queden satisfechas las exigencias de la seguridad jurídica."** José Cerezo Mir, <u>Curso de Derecho Penal Español</u>, Ed. Tecnos, Madrid, (1976), pág. 162.

Se acepta pues, que "[e]l principio de legalidad es un **postulado**, la aspiración a una meta ideal e inalcanzable, la de la seguridad jurídica absoluta. Una seguridad de esta clase no es posible con el tosco instrumento de la ley, como veremos en seguida. **Sirve de muy poco si no anida en el corazón del intérprete y del juez en el momento de la interpretación de la ley.**" José M. Rodríguez Devesa, <u>Derecho Penal Español</u>, (Parte General), Madrid, (1974), pág. 138.

Por esa razón, hemos resuelto:

> "Las leyes, incluyendo las penales, no son ejercicios inútiles de composición literaria. Son instrumentos de gobierno, y al interpretarlas 'el propósito general es una ayuda mucho más importante para el significado que cualquier regla que puedan prescribir la gramática o la lógica formal'.

Penal, Partes General y Especial, 2da. ed., Bogotá, Colombia, Ed. Temis, 1987, T. I, págs. 231 y ss.; J.M. Rodríguez Devesa, <u>Derecho Penal Español</u>, Parte General, 11ma. ed., Madrid, Dykinson, 1988, págs. 172 y ss.; F. Puig Peña, <u>Derecho Penal</u>, 5ta. ed., Barcelona, IBER–AMER, 1960, T. I, V. I, págs. 138 y ss.; J.M. Luzon Cuesta, <u>Compendio de Derecho Penal</u>, Parte General, 2da. ed., Madrid, Dykinson, 1986, págs. 39 y ss.; G. Landrove Díaz, <u>Introducción al Derecho Penal Español</u>, España, Tecnos, 1986, págs. 75 y ss.; A. Quintano Ripollés, <u>Curso de Derecho Penal</u>, Madrid, Editorial Revista de Derecho Privado, 1963, págs. 117 y ss.

Esto es así porque el propósito de una ley está sumergido en sus palabras, aunque no siempre se exprese de manera pedante en las palabras. El significado de la ley, debe recordarse, es más para sentirse que para demostrarse o, como en algún sitio ha expresado el Juez Learned Hand, el arte de la interpretación es 'la proliferación del propósito'. Al buscar ese propósito conviene recordar que no importa la elasticidad que pueda concederse al término científico, éste no puede usarse para describir el proceso legislativo. Ese es un proceso imperfecto pero práctico, mediante el cual el ciudadano ordinario adapta los medios al propósito, excepto cuando se refiere a problemas técnicos fuera del saber del hombre promedio." United States v. Shirey, 359 U.S. 255, 260 (1959) citado en Pueblo v. Tribunal Superior, 81 D.P.R. 763, 787 (1960).

## II

La Ley Núm. 49 de mayo de 1995, **autorizó expresamente** a la Administración de Corrección implantar los **Programas de Supervisión Electrónica a personas bajo su custodia y supervisión**. 4 L.P.R.A. sec. 1112(m). Tomamos conocimiento judicial de que se trata de una alternativa que permite a la persona bajo **custodia y supervisión**, entrar en un proceso rehabilitativo, **al transferirse la privación de su libertad de una institución clásica carcelaria a su hogar, con una programación diaria de sus actividades**. El objetivo reconocido es que el convicto, a la vez que trabaja y fortalece sus lazos familiares, **cumpla su sentencia.**

**Ciertamente, no se trata de una reclusión en una institución clásica de confinamiento,[15] esto es, una cárcel o prisión rodeada de muros, cercada y vigilada con guardias u oficiales de custodia armados. Sin embargo, sus características implican una reclusión institucional, a**

---

[15] **Confinamiento** simplemente significa la "[p]ena aflictiva consistente en relegar al condenado **a cierto lugar seguro para que viva en libertad, pero bajo la vigilancia de las autoridades.**" Diccionario de la Lengua Española, Vigésimo Primera Ed., (1992), pág. 379.

**Reclusión** es "la privación de la libertad en la **institución adecuada** durante el tiempo señalado en la Sentencia." Art. 40, Código Penal, (33 L.P.R.A. sec. 3202).

**saber, restricción de la libertad del convicto a un área en particular (residencia), continuando así sometido a la custodia y vigilancia efectiva de la Administración de Corrección.**

Físicamente se le coloca un transmisor electrónico (**brazalete**) que ininterrumpidamente emite señales a una unidad receptora ubicada en el teléfono de la residencia que sirve como **institución o facilidad adecuada de confinamiento.** La unidad receptora detecta la proximidad del **brazalete** dentro de un radio de acción de aproximadamente 100 a 200 pies cuadrados. A su vez, estas señales son objeto de vigilancia o monitoreo constante por personal de Corrección. Reglamento para Establecer el Procedimiento para el Programa de Inspección Electrónica, aprobado el 28 de febrero de 1994.

III

Aún así, la mayoría afirma que González Vega "no estaba recluido en una institución adecuada". Como argumento principal, aduce que hogar y domicilio no son sinónimos de institución por lo que no se cumple con uno de los ingredientes definitorios de reclusión, elemento del delito de fuga. **Esta conclusión mayoritaria no resiste análisis.**

Primero, desde sus orígenes, la Ley Orgánica de la Administración de Corrección —Núm. 116 de 22 de julio de 1974, según enmendada— visualizó y la facultó crear "instituciones de menor capacidad, pudiendo ser éstas semicerradas, **abiertas o de cualquier índole...",** entre las cuales están los **"hogares".** 4 L.P.R.A. sec. 1112(b) **en interacción,** sec. 1136. **En otras palabras, una lectura integral demuestra que la propia Ley ha estimado el hogar o residencia como sitio de confinamiento, esto es, institución adecuada.**

Segundo, no es función de este Tribunal sustituir el criterio, sabio o no, de la Asamblea Legislativa y convertirnos en **Supremo Secretario de la Administración de Correcciones dictando pautas de lo que es o no institucionalmente adecuado.** Tercero, no se ha presentado evidencia, menos probado, que la residencia de González Vega —una vez instalada la unidad receptora en su teléfono y colocara el transmisor

electrónico (brazalete), no constituyera para fines correccionales una

**institución adecuada.** <u>Cuarto</u>, para fines del delito de fuga, el

siguiente análisis comparativo ilustra claramente las semejanzas

legales-funcionales en el sistema correccional.

|  | **Método Custodia o Restricción Libertad Clásica** | **Método Custodia o Restricción Libertad Electrónico** |
|---|---|---|
| **Institución:** | Prisión o Cárcel | Residencia |
| **Espacio Reclusión:** | Celda y predios físi-cos delimitados de prisión | Radio acción residen-cial preestablecido |
| **Vigilancia:** | Oficiales de custodia armados | Brazalete electrónico |
| **Restricción Movimiento:** | Determinado espacio prisión según dis-puesto oficiales de custodia | 100 a 200 pies cuadra-dos de unidad recep-tora |
| **Supervisión:** | Adm. de Corrección | Adm. de Corrección |
| **Custodia Legal:** | Adm. de Corrección | Adm. de Corrección |

Su lectura revela un resultado distinto a la hipótesis

mayoritaria.

IV

Interpretar restrictivamente los estatutos penales no significa

adherirnos a una literalidad que ignore la clara intención legislativa.

<u>Pueblo</u> v. <u>Ríos Dávila</u>, res. en 30 de junio de 1997; <u>Pueblo</u> v. <u>Sierra</u>

<u>Rodríguez</u>, res. en 8 de febrero de 1995; <u>Pueblo</u> v. <u>Hernández Colón</u>, 118

D.P.R. 891 (1987); <u>Pacheco</u> v. <u>Vargas</u>, 120 D.P.R. 404 (1988); <u>Pueblo</u> v.

<u>Mantilla</u>, 71 D.P.R. 36 (1950).

> "Como señala el maestro Jiménez de Asúa, todas las
> leyes, aun las 'clarísimas', requieren interpretación. 'Toda
> la ley, por el hecho de aplicarse es interpretada, ya que al
> cotejar su contenido con el hecho real se produce un proceso
> de subsunción, al que contribuyen los órganos interpretativos
> (a veces el legislador y el científico y siempre el juez),
> por procedimientos gramaticales y teleológicos, y con
> resultados declarativos, restrictivos, extensivos o
> progresivos.' En cuanto a las leyes penales 'hay que
> armonizar la estricta legalidad del Derecho punitivo, con la
> imprescindible interpretación teleológica de las normas
> jurídicas. Reconociendo que el Derecho penal tiene caracteres
> de mayor certidumbre y estabilidad que las otras ramas, es
> imposible creer que la ley penal, <u>sensu strictu</u>, se basta del
> todo a sí misma y que sea suficiente interpretarla a la
> letra. No es un sistema completo y sin lagunas, de modo que

con el simple procedimiento lógico, basado en los preceptos legales escritos, se puedan resolver todas las cuestiones'." (Escolios omitidos). <u>Pueblo</u> v. <u>Tribunal Superior</u>, <u>supra</u>, 788.

Lamentablemente la mayoría también ignora esta norma de hermenéutica estatutaria. Además, pasa por alto el principio rector que late en la <u>Ley Orgánica de la Administración de Corrección</u>, a los efectos de que ella "[a]dquiere la **custodia legal** de todos sumariado y sentenciado a confinamiento por orden de un tribunal competente. 4 L.P.R.A. sec. 1112ñ. **Mediante este lenguaje la Asamblea Legislativa expresamente incorporó la doctrina jurisprudencial vigente a los efectos de que "[l]a fuga de la custodia legal <u>más bien que de un sitio de confinamiento</u> es lo que constituye la esencia del delito".** <u>Rivera</u> v. <u>Delgado</u>, 82 D.P.R. 692, 695 (1961), seguido en <u>Pueblo</u> v. <u>Ríos Dávila</u>, <u>supra</u>; y <u>Pueblo</u> v. <u>Figueroa Garriga</u>, res. en 8 de marzo de 1996.

De igual modo, la opinión mayoritaria desatiende que la adecuación típica, esto es, la conducta delictiva de fuga, se expresa generalmente por un **verbo descriptivo**, a saber, "aquellos susceptibles de ser apreciados con el simple conocimiento y cuya función es describir la conducta o el hecho que puede ser materia de imputación y de responsabilidad penal. **La referencia se hace entonces a la forma constitutiva de la parte más destacada de la conducta: apoderarse de una cosa mueble en el hurto; arrebatar, sustraer, retener u ocultar a una persona en el secuestro; <u>fugarse, estando privado de libertad</u>; matar, en el homicidio, entre otros ejemplos.**" Luis Carlos Pérez, <u>Derecho Penal</u>, T. I, 2da. Ed., Editorial Temis, Colombia, (1987), pág. 367.

V

En resumen, jurídicamente hablando, el Programa de Supervisión Electrónica **es un mecanismo más de confinamiento institucional y de sumisión legal de reclusión** de la Administración de Corrección.[16]

---

[16] El estado de la Florida fue el primero en implantar en el año 1983 el programa de supervisión electrónica. Despúes, otros estados, al igual que el sistema correccional federal, lo incorporaron. Thomas G. Blomberg,

A su amparo, aunque el convicto es trasladado fuera de las facilidades físicas clásicas de la institución penal, indudablemente **permanece bajo la custodia legal y supervisión** de la Administración de Corrección, confinado en su hogar, monitoreado y vigilado electrónicamente con un brazalete. **Se limita y restringe así su libertad de movimiento a un "radio de acción" preestablecido.** Bajo ninguna circunstancia puede abandonar su hogar o remover el brazalete electrónico.

**La Administración de Corrección lo somete a este tipo de reclusión, que aunque novel, no afecta en modo alguno su custodia legal, supervisión y vigilancia.**[17] Quien lo evade, comete el delito de fuga. **Desafortunadamente, la visión mayoritaria rezagada de la del Legislador, aparentemente no va más allá de la prisión o cárcel clásica cerrada.**

ANTONIO S. NEGRON GARCIA
Juez Asociado

---

Home Confinement and Electronic Surveillance, Intermediate Punishments, McCarthy, New York, 1987, pág. 169.

La casuística, aunque limitada, es muy reveladora a los fines de la solución del caso ante nos. En People v. Granquist, 454 N.W. 2d. 207, el Tribunal Apelativo de Michigan confirmó una condena por fuga contra un convicto que gozaba del aludido privilegio. Al igual que González Vega, el Departamento de Corrección de Michigan trasladó a Granquist a su residencia, supervisado por un monitor electrónico. Luego de transgredir los parámetros impuestos por el programa, fue acusado y convicto por fuga. En apelación alegó que no había cometido fuga puesto que el programa de supervisión electrónica no constituía reclusión ("prison"), según definido por el estatuto penal. **Aunque el estatuto expresamente no mencionaba el hogar como posible sitio de confinamiento, el Tribunal concluyó que la violación de los parámetros impuestos por el programa constituía fuga.** Posteriormente, reafirmó ese dictamen en People v. Sheets, 567 N.W. 2d. 478 (1997). En California prevalece igual interpretación a su estatuto. Mosbarger v. Rupf, 1998 WL 514022 (N.D. Cal.).

[17] Así implantado, es **inmeritorio** el argumento de González Vega de que disfrutaba "libertad condicionada". Menos arguir sentencia suspendida, la cual le había sido antes revocada.