En el Tribunal Supremo de Puerto Rico

| El Pueblo de Puerto Rico<br>        Recurrido<br><br>                V.<br><br>Luis Báez Ramos y otros<br>        Recurrente | Certiorari<br><br>99 TSPR 153 |

Número del Caso: CC-1998-0569, 816 y 947

Abogado de la Parte Recurrente:    Lcdo. Jaime J. Fuster Zalduondo

Oficina del Procurador General:    Lcdo. Miguel A. Santana Baguer
                                   Procurador General Auxiliar

Tribunal de Primera Instancia, Sala Superior de Fajardo

Juez del Tribunal de Primera Instancia: Hon. Danny López Soto

Tribunal de Circuito de Apelaciones: Circuito Regional VII Carolina-Fajardo

Panel Integrado por:      Hon. Arbona Lago
                          Hon. Salas Soler
                          Hon. Negroni Cintrón

Fecha: 10/11/1999

Materia: Inf. Art. 232 del C.P.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Recurrido

|  |  |
|---|---|
|  | CC-1998-569 |
|  | CC-1998-816 |
| v. | CC-1998-947 |

Luis Báez Ramos y otros

    Recurrente

Opinión del Tribunal emitida por el Juez Asociado señor Hernández Denton

San Juan, Puerto Rico a 11 de octubre de 1999.

Los casos consolidados de epígrafe requieren que determinemos si una persona convicta que se encuentra en la libre comunidad mediante el programa de pases extendidos de los Hogares de Adaptación Social de la Administración de Corrección, comete el delito de fuga tipificado en el artículo 232 del Código Penal de Puerto Rico, 33 L.P.R.A. sec. 4428, si incumple con el requisito administrativo de acudir regularmente a la institución que le concedió ese beneficio. Evaluadas las disposiciones estatutarias aplicables, resolvemos que el principio de legalidad, Artículo 8 del Código Penal de Puerto

Rico, 33 L.P.R.A. sec. 3031, y su jurisprudencia interpretativa, impiden sostener esa conclusión.

**I.**

Los hechos que originan los recursos de certiorari que tenemos ante nuestra consideración de manera consolidada son similares.

A. <u>Pueblo</u> v. <u>Liciaga González</u>, CC-98-569

Luego de cumplir parte de su condena de seis (6) años de reclusión por infringir el artículo 166 del Código Penal de Puerto Rico, (apropiación ilegal agravada), 33 L.P.R.A. sec. 4272, José A. Liciaga González fue referido a un Hogar de Adaptación Social.[1] Allí se le concedió el beneficio de un pase extendido, lo que le permitió reintegrarse a la comunidad, sujeto al cumplimiento de varias condiciones. Entre ellas, se le impuso la obligación de acudir una vez por semana a la institución y firmar su nombre ante un oficial de custodia.

En agosto de 1997, Liciaga González incumplió con este requisito. Consecuentemente, y de conformidad con el procedimiento para la revocación del permiso extendido establecido en el Memorando Núm. 92-06 de la Administración de Corrección, en ese mismo mes y año un oficial de custodia del Hogar de Adaptación Social procedió a hacerle una requisitoria de prófugo. Eventualmente, el Ministerio

---

[1] Fue egresado del campamento correccional "El Zarzal" e ingresado al Hogar de Adaptación Social de Fajardo el 11 de marzo de 1997.

Público lo acusó en el Tribunal de Primera Instancia de haber incurrido en el delito de fuga. Ante ello, Liciaga González presentó en el tribunal una moción al amparo de las Reglas 64 (A) y (P) de las de Procedimiento Criminal, 34 L.P.R.A. Ap. II, R. 64 (A) y (P), en la que solicitó la desestimación de la acusación bajo el fundamento de que no incurrió en el delito imputado. El foro de instancia denegó la solicitud, por lo que Liciaga González acudió ante el Tribunal de Circuito de Apelaciones. Este foro se negó a expedir el auto de certiorari. Ante ello, el imputado acudió ante este Tribunal. Es su contención que los hechos por los cuales se le acusa no configuran el delito de fuga. Por ello, sostiene que debemos ordenar la desestimación de la acusación formulada en su contra.

    B. Pueblo v. Báez Ramos, CC-98-816

    Luis A. Báez Ramos fue sentenciado a cumplir una pena de reclusión de dos (2) años por violaciones al artículo 95 del Código Penal de Puerto Rico (agresión agravada), 32 L.P.R.A. sec. 4032. Tras cumplir parte de su condena, la Administración de Corrección lo refirió a un Hogar de Adaptación Social.[2] Allí se le concedió un pase extendido. Se le impuso la obligación de acudir una vez por semana, entre las 8:00 de la mañana y 4:00 de la tarde, al Hogar de

---

[2] En específico, fue egresado del Campamento Correccional "El Limón" e ingresado al Hogar de Adaptación Social de Mayagüez.

Adaptación Social y dar su firma ante un oficial de custodia.

El 25 de septiembre de 1996, Báez Ramos se ausentó de la cita que tenía en el Hogar de Adaptación Social. Ante ello, el 27 de septiembre siguiente, el oficial de custodia de turno formuló una requisitoria de prófugo. Eventualmente, el Ministerio Público presentó una acusación por el delito de fuga, y, más tarde, Báez Ramos se declaró culpable del delito de tentativa de fuga como parte de un preacuerdo entre la defensa y el Ministerio Público.

Luego de varios trámites procesales, la defensa de Báez Ramos presentó en instancia una moción al amparo de la Regla 192.1 de las de Procedimiento Criminal, 34 L.P.R.A. Ap. II R. 192.1, bajo el fundamento de que la sentencia no era legal. Adujo que la conducta por la cual fue sentenciado el imputado no configura el delito de fuga. El foro de instancia denegó la moción. Inconforme, Báez Ramos acudió ante el Tribunal de Circuito de Apelaciones. Dicho foro apelativo se negó a expedir el recurso de certiorari solicitado. De esa determinación, Báez Ramos, representado por la Sociedad para la Asistencia Legal, acudió ante este Tribunal. En su único señalamiento de error nos plantea que el foro apelativo erró al no ordenar la anulación de la sentencia que le fue impuesta, toda vez que su conducta no configura el delito de fuga según tipificado en el artículo 232 del Código Penal.

C. Pueblo v. Colón De Jesús, CC-98-947

José A. Colón De Jesús fue sentenciado a cumplir una pena de reclusión de tres (3) años por violar las disposiciones del Artículo 404 de la Ley de Sustancias Controladas, 24 L.P.R.A. sec. 2402. Luego de cumplir parte de la sentencia que le fue impuesta, se le concedió la oportunidad de extinguir su condena en un Hogar de Adaptación Social.[3] Estando allí se le concedió el beneficio de reintegrarse a la comunidad mediante un pase extendido, sujeto a la condición de que se reportara al Hogar de Adaptación Social una vez por semana y firmara su nombre ante un oficial de custodia.

En enero de 1996, Colón De Jesús incumplió con su obligación de acudir al Hogar de Adaptación Social, por lo que fue acusado de cometer el delito de fuga. Luego de que el foro de instancia determinara que existía causa probable para creer que el delito había sido cometido, como parte de un preacuerdo entre la defensa y el Ministerio Público, Colón De Jesús se declaró culpable del delito de tentativa de fuga. El tribunal de instancia emitió sentencia condenatoria a tenor con el acuerdo llegado entre las partes.

Eventualmente, la defensa de Colón De Jesús presentó una moción bajo la Regla 192.1 de las de Procedimiento

Criminal, supra, en la que solicitó la anulación de la sentencia. Adujo que la conducta por la cual fue sentenciado no configuraba el delito de fuga tipificado en el artículo 232 del Código Penal. El tribunal de instancia denegó la moción. No conforme con esta decisión, la defensa acudió ante el Tribunal de Circuito de Apelaciones, el cual, mediante resolución, sostuvo al foro de instancia. Colón De Jesús acudió ante este Tribunal.

## II.

Los artículos 26 al 32 de la Ley Orgánica de la Administración de Corrección, Ley Núm. 116 de 22 de julio de 1974, según enmendada, 4 L.P.R.A. secs. 1201−1206, autorizan al Administrador de esa agencia a establecer y regular los llamados Hogares de Adaptación Social. Estas son instituciones de vigilancia mínima a donde se trasladan a ciertos confinados con miras a "facilitar su retorno a la libre comunidad". 4 L.P.R.A. sec. 1201. Con ese fin, estas instituciones brindan diversos tipos de servicios a la población que sirve, tales como orientación vocacional, servicios psicológicos, orientación sobre problemas de familia, entre otros. Id.

Las personas que son trasladadas a un Hogar de Adaptación Social, a su vez, son elegibles para recibir permisos para salir de la institución siempre y cuando

---

[3] Fue egresado del Campamento Correccional "El Limón" e ingresado al Hogar de Adaptación Social de Mayagüez.

acepten cumplir ciertas condiciones. 4 L.P.R.A. sec. 1136. Estos permisos no constituyen un derecho del convicto. Constituyen una medida de tratamiento que se concede discrecionalmente por el Administrador de Corrección cuando se estima que ello será útil al proceso rehabilitador. De ahí, que el permiso puede ser revocado si se determina que no está surtiendo el efecto rehabilitador deseado o cuando la seguridad del convicto o la comunidad estén en riesgo. Id.

Existen diversos tipos de permisos de salida de la institución.[4] Uno de éstos lo constituyen los llamados pases extendidos. Estos son definidos como "el permiso que se le concede a un residente de un Hogar de Adaptación Social para residir en el hogar propuesto mientras cumpla las condiciones impuestas y hasta que se le conceda la libertad bajo palabra o extinga su sentencia, lo que ocurra

---

[4] El "Reglamento para la concesión de permisos a los confinados para salir o residir fuera de las instituciones penales del Estado Libre Asociado de Puerto Rico", Reglamento 4851 de la Administración de Corrección, regula, al menos, los siguientes tipos de permisos: (1) permisos para residir en la comunidad, (para visitar sus hogares o de algún familiar o relacionado); (2) permisos para salir condicionalmente a la comunidad; (permisos para visitar sus hogares o el de algún familiar o relacionado en caso de gravedad o muerte; permiso para recibir adiestramiento académico y/o vocacional en la comunidad; permisos para visitar centros culturales, recreativos, educativos y religiosos; permisos para salir a la comunidad a recibir servicios médicos, tratamiento psico-social u otros servicios especializados en forma ambulatoria; permisos para hospitalización; permisos para salir a la comunidad a trabajar devengando compensación); y (3) permisos para residir en la comunidad, (para recibir tratamiento médico o

primero". "Normas y procedimientos para la concesión de pases extendidos a los residentes de los Hogares de Adaptación Social", Memorando Normativo OAIP 92-06. Debe advertirse que, en circunstancias normales y siempre y cuando el convicto cumpla con la reglamentación aplicable, este tipo de permiso es de naturaleza permanente, sin fecha fija de reingreso a la institución. Su vigencia, conforme a su naturaleza, expira cuando se le concede al convicto libertad bajo palabra, o cuando extingue su sentencia.

Previo a entrar al programa de pases extendidos, el convicto es orientado en torno a sus deberes. Con ese fin, se le provee un documento, que debe firmar, que contiene de forma específica todas sus responsabilidades. Entre ellas se encuentra su deber de comparecer puntualmente al Hogar de Adaptación Social que le brinda servicios siempre que se le cite. Asimismo, en el documento se le advierte a la persona que, de violar las condiciones impuestas, se iniciará un procedimiento para revocarle el beneficio y que estará "sujet[a] a que se radiquen cargos por el Artículo 232 del Código Penal de PR pasada[s] 48 horas de la fecha de [sus] citas de supervisión[,] si no [se] reporta". "Orientación sobre condiciones y normas a seguir por el cliente mientras disfrute de pases extendidos", Administración de Corrección.

---

ambulatorio interno en un hospital, asilo o albergue, para trabajar o estudiar). Véase, Art. VII.

En los casos consolidados, tenemos a varias personas que resultaron convictas por distintos delitos bajo nuestro Código Penal. Eventualmente, y tras cumplir parte de sus respectivas sentencias en prisión, la Administración de Corrección las refiere a un Hogar de Adaptación Social para que extingan lo que les resta de sus respectivas penas. Estando allí, se les concede el beneficio de un pase extendido mediante el cual se pueden reintegrar a la libre comunidad sujetos al cumplimiento de varias condiciones, entre ellas, el requisito de acudir una vez por semana, entre las 8:00 de la mañana y 4:00 de la tarde, al Hogar de Adaptación Social y firmar su nombre ante un oficial de custodia.

Los aquí peticionarios incumplieron esta condición. Por ello, fueron procesados judicialmente por el delito de fuga. En dos de los casos, y luego de un preacuerdo entre la defensa y el Ministerio Público, los imputados fueron sentenciados a cumplir pena de reclusión por el delito de tentativa de fuga. En el restante, el foro de instancia se negó a desestimar la acusación bajo las Reglas 64 (A) y (P) de las de Procedimiento Criminal, supra. Ante este foro, los imputados nos plantean como única controversia si el principio de legalidad impide procesarlos por el delito de fuga tipificado en el artículo 232 del Código Penal.[5]

---

[5] De los apéndices de los casos consolidados surge que la controversia planteada ante nuestra consideración ha sido considerada por el Tribunal de Circuito de Apelaciones

**III**.

Recientemente tuvimos la oportunidad de expresarnos en torno a las circunstancias que configuran el delito de fuga conforme al artículo 232 de nuestro Código Penal.[6] En Pueblo v. González Vega, res. el 16 de marzo de 1999, 99 TSPR 21, 147 D.P.R.___ (1999), destacamos que para que una persona pueda ser procesada y resultar convicta por el delito de

---

en varias ocasiones. Diversos paneles de ese foro apelativo han llegado a resultados conflictivos con las decisiones que hoy estamos considerando de forma consolidada. Véanse, Pueblo v. Arroyo Chanza y Cintrón Cotto, KLCE-98-00315 y KLCE-98-00441, Sentencia de 30 de Junio de 1998 (desestimando una acusación por el delito de fuga bajo hechos similares a los que tenemos ante nuestra consideración); Pueblo v. Ballester Salgado y otros, KLCE-98-00163 y KLCE-98-00186, Sentencia de 29 de mayo de 1998 (confirmando varias resoluciones del Tribunal de Primera Instancia mediante las cuales se anularon varias condenas por el delito de fuga); Pueblo v. Molina Rodríguez, KLCE-98-00412, Sentencia de 24 de junio de 1998 (confirmando una anulación de una sentencia de condena por el delito de fuga); Pueblo v. Martínez Mercado, KLCE-98-00323, Sentencia de 6 de julio de 1998 (confirmando una anulación de una sentencia por el delito de fuga); y Pueblo v. Aguilar Rodríguez, KLCE-98-00235, Sentencia de 30 de septiembre de 1998 (confirmando una anulación de una sentencia emitida por el delito de fuga).

[6] En lo pertinente, el artículo 232 del Código Penal de Puerto Rico dispone:

Toda persona sometida legalmente a detención preventiva, sometida a tratamiento y rehabilitación en un programa del Estado Libre Asociado de Puerto Rico, o privado, supervisado y licenciado por una agencia del mismo conforme a un procedimiento especial de desvío bajo la Regla 247.1 de Procedimiento Criminal, [...] o [el inciso (b) del artículo 404 de la Ley de Sustancias Controladas], sometida legalmente a reclusión o a medida de seguridad de internación, que se fugare, será sancionada conforme a las siguientes penas:

[...]

33 L.P.R.A. sec. 4428.

fuga, la persona imputada del delito debe evadirse mientras se encuentra sometida legalmente,

> (1) a detención preventiva, (2) a reclusión --cumpliendo sentencia firme o en trámite de apelación--, o (3) a medida de seguridad de internación, o sometido (4) a tratamiento y rehabilitación en un programa del Estado Libre Asociado, conforme a un procedimiento especial de desvío bajo la Regla 247.1 de Procedimiento Criminal, (5) a tratamiento y rehabilitación en un programa privado, supervisado y licenciado por una agencia del Estado Libre Asociado, conforme a un procedimiento especial de desvío bajo la Regla 247.1 de Procedimiento Criminal, (6) a tratamiento y rehabilitación en un programa del Estado Libre Asociado, conforme a un procedimiento especial de desvío bajo el inciso (b) del artículo 404 de la Ley de Sustancias Controladas, o (7) a tratamiento y rehabilitación en un programa privado, supervisado y licenciado por una agencia del Estado Libre Asociado, conforme a un procedimiento especial de desvío bajo el inciso (b) del artículo 404 de la Ley de Sustancias Controladas. Id., (nota al calce omitida).

Destacamos en esa ocasión, además, que "el injusto penal no ocurre con la evasión de cualquier custodia legal, sino, conforme con el principio de legalidad, con la evasión de la custodia legal **prevista específicamente en la descripción literal del tipo establecido en el artículo 232"**. Id., (énfasis en el original) (nota al calce omitida).

Así pues, el análisis en los casos consolidados de autos, en torno a si los imputados cometieron el delito de fuga, requiere examinar si se configura alguna de las instancias establecidas en el artículo 232 del Código Penal. Por imperativo del principio de legalidad, sólo si se satisface claramente alguna de las circunstancias

enumeradas por el legislador en el artículo 232 procedería una acusación por el delito de fuga.

Conforme a los autos, no hay duda de que los imputados no se encontraban en detención preventiva. Había mediado una sentencia de convicción previo a los hechos por los cuales fueron procesados por el delito de fuga, lo que excluye ese supuesto. Pueblo v. Figueroa Garriga, res. el 8 de marzo de 1996, 140 D.P.R.__ (1996); véase además, Pueblo v. González Vega, supra, (en donde afirmamos: "el término 'detención preventiva' se refiere al período anterior al juicio 'en el cual el acusado se encuentra, por razón de no haber podido prestar la fianza impuesta, 'sumariado' en espera de que se le celebre el correspondiente proceso criminal'").

Tampoco estaban sometidos a una medida de seguridad de internación, pues "ese término se refiere a las medidas de seguridad impuestas a los incapacitados mentalmente, a los alcohólicos y taxicómanos y a los delincuentes sexuales peligrosos, compulsivos y habituales". Id., véase, Cód. Penal de P.R., arts. 70-74, respectivamente, 33 L.P.R.A. secs. 3371-3375; véase además, Dora Nevares Muñiz, Código Penal de Puerto Rico, comentado 366 (1993).

Finalmente, todos los imputados fueron referidos a Hogares de Adaptación Social por una determinación administrativa, luego de recaer una sentencia de convicción en un procedimiento judicial ordinario. Ello excluye la

aplicación de lo dispuesto en el artículo 232 en torno a los mecanismos especiales de desvío de la Regla 247.1 de las Procedimiento Criminal, 34 L.P.R.A. Ap. II, R. 247.1, y el inciso (b) del artículo 404 de la Ley de Sustancias Controladas, 24 L.P.R.A. sec. 2404(b).

En vista de lo anterior, la única forma en que procedería la acusación y procesamiento por el delito de fuga en los casos consolidados que estamos considerando, según tipificado en el Artículo 232 del Código Penal, es si se sostiene que al momento del incumplimiento con las condiciones del programa de pases extendidos, los imputados se encontraban cumpliendo pena de reclusión.

## IV.

El Código Penal define el concepto "pena de reclusión" como "la privación de la libertad en la institución adecuada durante el tiempo señalado en la sentencia". Artículo 40 del Código Penal de Puerto Rico, 33 L.P.R.A. sec. 3202. Al interpretar esta disposición, hemos destacado que para que una persona se encuentre bajo pena de reclusión, es preciso que concurran los siguientes tres elementos: (1) privación de la libertad; (2) en una institución adecuada, y (3) en virtud de una sentencia. Pueblo v. Ríos Dávila, res.el 30 de junio de 1997, 143 D.P.R.__ (1997).

Resulta claro que en los casos de autos, aunque los imputados se encontraban en la libre comunidad, su libertad

estaba limitada por las condiciones que le fueron impuestas bajo el programa de pases extendidos. Su situación era similar a la de una persona sometida al uso de un brazalete electrónico, situación que previamente hemos resuelto que satisface el primer criterio.[7] Véase, Pueblo v. González

_____

[7] Las condiciones impuestas a una persona que entra al programa de pases extendidos son las siguientes:

a. [S]ometerse a pruebas de orina, sangre, aliento y cualquier otra con el propósitos de detectar el uso de sustancias controladas y alcohol.

b. [I]ntegrarse al programa de Supervisión Electrónica cuando la situación lo amerite, de satisfacer los criterios de eligibilidad del mismo.

c. [A]utorizar por escrito a la Administración de Corrección a llevar a conocimiento de aquellos funcionarios del lugar donde se encuentre trabajando, estudiando o recibiendo tratamiento, de su status legal. Así también, autoriza a estos funcionarios para que ofrezcan información a la Administración de Corrección sobre todo lo relacionado a sus ajustes.

d. Mientras se encuentre fuera del hogar llevará consigo la tarjeta de identificación que se le proveyó al momento de concedérsele el permiso de salida.

e. No se detendrá en negocios donde se consumen bebidas alcohólicas, no visitará sitios reconocidos como centros de prostitución o de juegos prohibidos, ni frecuentará cualquier otro lugar donde el ambiente sea contrario a los propósitos para los cuales se concedió el permiso.

f. Evitará situaciones que puedan surgir y que en alguna forma afecten los sentimientos de pesar y/o rencor de las personas perjudicadas o relacionadas con el acto delictivo cometido, la seguridad de los vecinos de la comunidad a visitarse o la ciudadanía en general, así como su proceso de resocialización.

g. No usará drogas narcóticas, barbitúricos o sustancias estimulantes sin prescripción médica. De usarlos por prescripción médica, el residente deberá requerir del médico certificación escrita donde se haga constar que le fue recetado drogas

<u>Vega</u>, <u>supra</u>. Asimismo, esas limitaciones fueron consecuencia de una sentencia judicial mediante la cual se les halló culpable de la violación de diversas disposiciones penales. Ahora bien, estimamos que el elemento de "institución adecuada" no se satisface bajo los hechos presentes.

---

narcóticas, barbitúricos, sustancias estimulantes o medicamentos de los que hizo uso mientras disfrutaba de pase o poseía al regresar de pase.

h. El residente a quien se le autorice este permiso, se abstendrá de usar bebidas alcohólicas o sustancias embriagantes.

i. Cuando ocurra cualquier inconveniente o situación adversa que puedan llevarlo a incurrir en violaciones a las condiciones de pase, deberá acudir a la institución penal más cercana, Hogar de Adaptación Social, Oficina del Programa de Libertad Bajo Palabra y Probatoria, Oficina Central de la Administración de Corrección o al Cuartel de la Policía más cercano para notificar sobre la situación y solicitar que la misma sea informada al Director del hogar. Permanecerá en ese lugar hasta tanto le sean impartidas las instrucciones cursadas por el Director o su representante autorizado. Las instrucciones cursadas para ser impartidas al residente deberán hacerse por escrito en su expediente.

j. Comparecer semanalmente a entrevistas en el hogar y rendir un informe de supervisión.

K. Deberá comparecer puntualmente cuando se le cite.

l. Deberá estar en su hogar no más tarde de las 10:00 p.m. a menos que medie justa causa, en cuyo caso deberá notificar al hogar de Adaptación Social y obtener autorización o cuando tenga permiso previo del Hogar.

m. El pase estará limitado al municipio donde resida. Cualquier salida fuera del mismo tendrá que ser autorizada previamente por el Director del hogar o su representante autorizado.

n. Cualquier otra que sea aplicable al caso en particular o que esté contenida en el Reglamento de los Hogares. Memorando Normativo Núm. OAIP 92-06.

En Pueblo v. González Vega, supra, nos negamos a reconocer que una persona que es egresada de una institución penal y sometida a un programa de supervisión electrónica para que continúe extinguiendo su condena desde su hogar se encuentra sujeto a pena de reclusión. Afirmamos que "[c]on la egresión de la institución penal, [...] cesó la reclusión [del allí imputado]". Id. Afirmamos que "el hogar del peticionario no es una institución, ni en el contexto del artículo 40 del Código Penal ni 'según el contexto y el significado sancionado por el uso común y corriente'". Id., n.7 (énfasis en el original). Con ello, resolvimos que el mero hecho de que la libertad de una persona se encuentre restringida o limitada no convierte al hogar de esa persona, donde extingue parte de la sentencia, en una institución adecuada para propósitos del delito de fuga.[8]

De igual forma, en el presente caso, con la egresión de los imputados de la institución penal y la concesión de un

---

[8] Asimismo, nos negamos a reconocer que el eventual ingreso de González Vega en uno de los centros de "Hogares CREA" cambió esa circunstancia, pues su ingreso a esa institución no ocurrió como parte de programas de desvío bajo la Regla 247.1 de las de Procedimiento Criminal o el inciso (b) del artículo 404 de la Ley de Sustancias Controladas. El legislador sólo estableció que la evasión de una institución privada sería constitutiva del delito de fuga, si la misma ocurre luego de que persona es referida a un programa de rehabilitación bajo dichos mecanismos de desvío. Concluimos que "[e]l legislador no previó como un hecho penalmente antijurídico que una persona que se encuentra extinguiendo una condena sujeta a supervisión electrónica abandone una institución pública o privada en

pase extendido o permanente, cesó su reclusión. La concesión del pase extendido, si bien conlleva la imposición de condiciones que limitan la libertad, no hace del hogar de la persona que participa del programa una institución adecuada bajo el concepto "pena de reclusión". El propio Memorando Normativo de la Administración de Corrección, OIAP 92-06, que regula este programa, reconoce que su finalidad es "establece[r] el movimiento de residentes en los Hogares de Adaptación Social hacia la libre comunidad". En tal caso, el propósito del programa de pases extendidos no es la reclusión en sí, sino la más pronta reintegración del convicto a la libre comunidad. De este modo, bajo este esquema, el hogar de los beneficiarios del programa de pases extendidos no es una extensión de la prisión o de una institución de rehabilitación. Sigue siendo parte de la libre comunidad a la cual se pretende reintegrar al convicto.

En vista de lo anterior, es forzoso concluir que en los casos consolidados no se satisface ninguna de las circunstancias previstas por el legislador en el artículo 232 para que se configure el delito de fuga.

## V.

El Ministerio Público nos llama la atención al hecho de que la Ley Orgánica de la Administración de Corrección dispone en su artículo 31, que el "confinado que dejare de

la que se encuentra recibiendo tratamiento o

**regresar al Hogar de Adaptación Social** o que lo hiciera después de la hora indicada en el permiso que se le haya concedido quedará sujeto a los dispuesto en [el Art. 10]". 4 L.P.R.A. sec. 1205 (énfasis suplido). Este artículo 10, dispone, a su vez, entre otras cosas, lo siguiente:

> Cualquier confinado que no regresare a la institución penal o centro de tratamiento público o privado, donde se encuentre recluido, o que lo hiciera después de la hora indicada en el permiso que le haya sido concedido, será considerado fugitivo de la justicia y procesado conforme a continuación se dispone:
>
> (1) **Si el confinado no regresare o el regreso ocurriere después de transcurridas las cuarenta y ocho (48) horas de haber expirado el permiso concedido, incurrirá en el delito de fuga y le serán aplicables [las disposiciones del artículo 232 del Código Penal de Puerto Rico].**
>
> (2) Si el regreso ocurriere dentro de las cuarenta y ocho (48) horas de haber expirado el permiso, la situación será evaluada por el Administrador o los funcionarios que él designe, a los fines de determinar si hubo razones justificadas para dicha demora, o si por el contrario, procede que se procese a la persona en cuestión por el delito de fuga, según se dispone en el inciso anterior.
> 4 L.P.R.A. sec. 1136 (énfasis suplido).

A juicio del Procurador General, estas disposiciones tipifican como delito de fuga la conducta de los aquí imputados.

Nuestra lectura de los referidos artículos nos convence de que el cuadro de hechos que tenemos ante nuestra consideración no está comprendido dentro de la situación que el artículo 10 de la Ley Orgánica de la Administración

---

rehabilitación". Id.

de Corrección tipifica como delito. La condición que la ley establece para que se configure esta modalidad del delito de fuga lo constituye el hecho de que el beneficiario del programa **"no regresare** o el **regreso** ocurriere después de transcurridas las cuarenta y ocho (48) horas de haber **expirado** el permiso concedido". De este modo, las disposiciones aludidas aplican sólo a permisos o pases que establecen un **término de regreso** al Sistema Correccional o a una institución, facilidad o centro privado, por razón de que el permiso **expira.**

Los llamados pases extendidos o permanentes, como el que fue concedido a los imputados, no son de esta naturaleza. Estos permisos no tienen fecha de expiración que obligue al convicto a regresar a la institución para su internación. Como afirmamos antes, este tipo de permiso permite que un convicto "resid[a] en el hogar [...] mientras cumpla las condiciones impuestas y **hasta que se le conceda la libertad bajo palabra o extinga su sentencia, lo que ocurra primero".** Memorando Normativo OAIP 92-06 (énfasis suplido). Carece, por lo tanto, de los supuestos que configurarían la evasión para propósitos de esta modalidad del delito de fuga.

La referencia en la Ley Orgánica de la Administración de Corrección al artículo 10 en la parte que trata sobre los Hogares de Adaptación Social, para propósitos de la configuración del delito de fuga, sólo puede darse en el

contexto de pases o permisos de naturaleza temporera, no en el contexto de los permisos extendidos como el que tenemos ante nuestra consideración. En este sentido, coincidimos con la Sociedad para la Asistencia Legal cuando nos expresa en su bien fundamentado alegato que,

> el legislador no sancionó como delito de [f]uga el incumplimiento del confinado con las condiciones del pase extendido otorgado[,] ya que este tipo de delito no tiene límite de tiempo alguno bajo el cual se supone regrese a la "institución adecuada" [de la] cual fue egresado. Petición de Certiorari CC-98-816, en la pág. 18.

Asimismo, coincidimos cuando nos expresa que en el contexto de pases extendidos,

> [n]o hay [...] una custodia legal constructiva sobre el sujeto, aún cuando su libertad está sujeta a condiciones [...]. No está obligado el sujeto a regresar a un estado de confinamiento físico. Sería absurdo interpretar que cada vez que el individuo va a firmar al hogar de adaptación social está ingresando de nuevo a éste". Id. en la pág. 19.

Ante el incumplimiento de las condiciones impuestas en el contexto de permisos extendidos procede sólo su revocación por determinación administrativa. Recordemos que el principio de legalidad proscribe tanto instar acción penal contra una persona por hechos que no estén expresamente definidos como delito, como crear delitos, penas o medidas de seguridad por analogía. Art. 8 del Código Penal de Puerto Rico, 33 L.P.R.A. sec. 3031; véase además, Art. 9 del Código Penal de Puerto Rico, 33 L.P.R.A. 3041.

Finalmente, el hecho de que el artículo 232 del Código Penal no establezca como fuga la situación específica que plantean los casos consolidados tampoco se subsana con la reglamentación administrativa aplicable y con el hecho de que los aquí imputados hayan firmado un documento de la Administración de Corrección les advertía sobre esa posibilidad. El Procurador General así lo admite cuando nos señala que

> [e]l propósito del documento de "orientación sobre condiciones y normas a seguir por el cliente mientras disfrute de pases extendidos" que suscribe el confinado antes de acogerse a los beneficios del [...] programa, **no es tipificar delito ni sancionar conducta alguna**. El mismo tiene la finalidad de informar al confinado de las condiciones a que estará sujeto durante el período en que disfrute de los beneficios del programa y apercibirle de las consecuencias de un incumplimiento. Escrito del Procurador General, en la pág. 9, (énfasis suplido).

Coincidimos en esta apreciación. Véase además, Pueblo v. González Vega, supra.

Procede por lo tanto revocar las decisiones recurridas y ordenar las desestimación de los cargos por el delito de fuga. Claro está, ello no impide que la Administración de Corrección imponga las sanciones administrativas que procedan conforme a la reglamentación vigente.

Se emitirá la Sentencia correspondiente.


                            Federico Hernández Denton
                            Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


El Pueblo de Puerto Rico

    Recurrido

                                        CC-1998-569
                                        CC-1998-816
        v.                        CC-1998-947

Luis Báez Ramos y otros

    Recurrente



                                 SENTENCIA

San Juan, Puerto Rico a 11 de octubre de 1999.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente Sentencia, y habiendo sido expedido previamente el auto de certiorari en los casos consolidados de epígrafe, se revocan las resoluciones emitidas por el Tribunal de Circuito de Apelaciones en los casos Pueblo v. Liciaga González, KLCE9800060; Pueblo v. Báez Ramos, KLCE9800947; Pueblo v. Colón de Jesús, KLCE9800956.

Se ordena el archivo de los cargos por el delito de fuga imputado.

Así lo pronunció y manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Negrón García emitió Opinión Disidente a la cual se unió el Juez Asociado señor Corrada del Río. El Juez Asociado señor Fuster Berlingeri inhibido.


Isabel Llompart Zeno
Secretaria Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Demandante recurrido        CC-98-569
                                CC-98-816
                                CC-98-947    Certiorari

        v.

Luis Báez Ramos, José Liciaga
González y José A. Colón
De Jesús

    Demandados-peticionarios

Opinión Disidente del Juez Asociado señor Negrón García a la cual se une el Juez Asociado señor Corrada del Río

San Juan, Puerto Rico, a 8 de octubre de 1999

Con la mayor consideración, la opinión mayoritaria confunde los principios que gobiernan la recta adjudicación de estos recursos. No envuelve interpretación alguna del Art. 237 del Código Penal que tipifica el Delito de Fuga **clásico**; menos invocar el principio de legalidad de su Art. 8.

Al hacerlo, la mayoría ignora la ley aplicable y se aferra a una visión arcaica de instituciones carcelarias rodeadas de muros, verjas y vigiladas por guardias, no cuando la libertad del confinado comprende otras medidas más avanzadas de restricción establecidas por la Asamblea Legislativa.[9]

---

[9] En virtud de la autoridad expresa de la Ley Orgánica de la Administración de Corrección –Núm. 116

Vía una interpretación forzada,[10] rehusamos derogar el Delito de Fuga _especial_, modalidad tipificada en la Ley Núm. 116, según enmendada, y convertirlo judicialmente "en el derecho a permisos extendidos de fuga".

Como _stare decisis_, esta decisión impacta seria y negativamente el sobrecargado sistema correccional y debilita sus mecanismos de control y supervisión. Significa que las autoridades no podrán encausar los numerosos confinados que incurrieron en este delito de fuga especial, al evadirse y no regresar a los Hogares de Adaptación Social, de donde salieron con permisos extendidos; **sus delitos quedan impunes.** Desconocemos exactamente cuántos confinados son, están bajo investigación o en trámites ante los tribunales de primera instancia. Sí sabemos, que en este foro apelativo penden recursos de diecisiete (17) convictos acusados que resultarán beneficiados hoy por esta decisión.

**La situación reviste de gravedad y urgencia.** Primero, hasta que la Asamblea Legislativa redacte una disposición legal que satisfaga el criterio mayoritario, las alternativas a corto plazo que tienen las autoridades correccionales es desatender el problema o, **para proteger la seguridad de la ciudadanía, suspender el programa de pases extendidos y cancelar los vigentes.**

---

de 22 de julio de 1974, según enmendada por las Leyes Núms. 21 de 10 de julio de 1978 y 20 de 20 de julio de 1989-, desde hace algún tiempo, Corrección designó "instituciones adecuadas" **privadas,** los llamados **Hogares de Adaptación Social**. Los confinados que allí ingresan – denominados **eufemísticamente** "clientes residentes" de la institución- son elegibles para recibir permisos o pases para salir de la institución **siempre que cumplan con los requisitos válidamente establecidos en el Reglamento sobre Permisos a Confinados para Salir Fuera de las Instituciones Penales**. Art. 10. Además de los requisitos de elegibilidad, el Administrador de Corrección establece por reglamento **la forma en que habrá de comprobarse la salida y regreso a la institución, condiciones y duración de los diferentes permisos**.

[10] En materia de interpretación penal la regla dorada nos la suministra el Art. 6 del Código Penal, al señalar que las "palabras y frases se interpretarán según el contexto y el significado sancionado por el uso común y corriente". (33 L.P.R.A. sec. 3021).

Es elemental que toda interpretación de ley debe ser congruente y viabilizar el propósito del Legislador, no anularlo u obstaculizarlo. Pueblo v. Ríos Dávila, res. en 30 de junio de 1997, 143 D.P.R. ___ (1997); Pacheco v. Vargas, Alcaide, 120 D.P.R. 404 (1988).

Y, segundo, **por sus efectos retroactivos**, cuantitativamente la Opinión mayoritaria no sólo se proyecta sobre las **fugas** actualmente bajo investigación, o en trámite judicial, sino que sus "beneficios" se extienden a todos aquellos confinados que en el **pasado** se hayan declarado culpable y, al igual que los aquí peticionarios Luis A. Báez Ramos y José A. Colón De Jesús (Certioraris: CC-98-816 y 947), pidan la nulidad de sus sentencias bajo la Regla 192.1 de Procedimiento Criminal. **Esta decisión es una llave judicial que instantáneamente "abre" las puertas cerradas hace años de los Hogares de Adaptación, pues anula todas las sentencias de fuga dictadas contra confinados evasores con permisos extendidos, no importa que hayan sido basadas en alegaciones de culpabilidad o en fallos o veredictos condenatorios.**

I

Bastaría un análisis cuidadoso del historial legislativo y evolución de la Ley Núm. 116 para la mayoría percatarse de que su interpretación **desatiende** los claros textos de sus Arts. 31 y 10, **que directa y expresamente tipifican una nueva forma del Delito de Fuga aplicable al confinado que disfruta de un pase extendido o temporero y se evade al no regresar al Hogar de Adaptación Social en las fechas o días prefijados.** Elaboremos.

El Art. 31 reza:

> "**Cualquier confinado que dejare de regresar al Hogar de Adaptación Social o que lo hiciera después de la hora indicada en el permiso que se le haya concedido quedará sujeto a lo dispuesto en la sec. 1136 [Art. 10] de este título.**" (4 L.P.R.A. sec. 1205).

A su vez, el Art. 10 [sec. 1136] dispone taxativamente:

> "<u>**Cualquier** confinado que no **regresare** a la institución penal o centro de tratamiento</u> público o <u>privado, donde se encuentre recluido, o que lo hiciera después de la hora indicada en el permiso que le haya sido concedido, será considerado fugitivo de la justicia y procesado conforme a continuación se dispone:</u>
>
> (1) **Si el confinado no regresare** o el regreso ocurriere **después** de transcurridas las cuarenta y ocho (48) horas de haber expirado el permiso

concedido, **incurrirá en el delito de fuga** y le serán aplicables las disposiciones de la sec. 4428 [Art. 4428] del Título 33 [Código Penal].

(2) Si el regreso ocurriere dentro de las cuarenta y ocho (48) horas de haber expirado el permiso, la situación será evaluada por el Administrador o los funcionarios que él designe, a los fines de determinar si hubo razones justificadas para dicha demora, o si, por el contrario, **procede que se procese a la persona en cuestión por el delito de fuga**, según se dispone en el inciso anterior."

La Asamblea Legislativa estableció y describió así detalladamente **una nueva modalidad** del Delito de Fuga para cubrir "**cualquier** confinado que no regresa" o lo hace después de la hora concedida al Hogar de Adaptación Social. Lo clasificó como **fugitivo de la justicia** con el propósito de que la policía y demás agentes públicos pudieran emprender inmediatamente su búsqueda y eventual arresto. **Adviértase que el Legislador no cualificó de ningún modo el período de tiempo fijado en el permiso, esto es, su carácter de extendido o temporal**. O sea, la Asamblea Legislativa no impuso otros requisitos ni diferenció sus elementos en modalidades semánticas[11] basadas en permisos o pases "temporales o extendidos". **Por mandato expreso, este Delito de Fuga especial se configura ante la omisión del confinado a personarse, contrario a los términos del permiso "que se le haya[...] concedido"**.

II

Aún cuando la mayoría **acepta** que los Arts. 10 y 31 tipifican esta modalidad especial del Delito de Fuga (Opinión del Tribunal, págs. 16, 17 y 18), se niega a aplicarla a base del argumento de que los pases extendidos no tienen fecha de expiración. (Id.) **Inexplicablemente ese**

---

[11] "Las leyes, incluyendo las penales, no son ejercicio inútiles de composición literaria. Son instrumentos de gobierno, y al interpretarlas 'el propósito general es una ayuda mucho más importante para el significado que cualquier regla que puedan prescribir la gramática o la lógica formal'. Esto es así porque el propósito de una ley está sumergido en sus palabras, aunque no siempre se exprese de manera pedante en las palabras. El significado de la ley, debe recordarse, es más para sentirse que para demostrarse o, como en algún sitio ha expresado el Juez Learned Hand, el arte de la interpretación es 'la proliferación del propósito'. Al buscar ese propósito conviene recordar que no importa la elasticidad que pueda concederse al término científico, éste no puede usarse para describir el proceso legislativo. Ese es un proceso imperfecto pero práctico, mediante el cual el ciudadano ordinario adapta los medios al propósito, excepto cuando se refiere a problemas técnicos fuera del saber del hombre promedio." United States v. Shirey, 359 U.S. 255, 260 (1959) citado con aprobación en Pueblo v. Tribunal Superior, 81 D.P.R. 763, 787 (1960).

**razonamiento mayoritario no reconoce la obligación ínsita que el propio pase extendido contiene del convicto regresar físicamente, todas las semanas, a la institución y firmar el nombre ante un oficial de custodia**. (Opinión del Tribunal, págs. 2, 3 y 5). Como resultado, desnaturaliza el deber afirmativo de "regresar".

"<u>Regresar</u>", del latín <u>regressus</u>, significa simplemente "[i]r de nuevo a un sitio de donde se ha salido"; "[v]olver al lugar donde se partió"; "al lugar de origen o al punto de partida".[12]

Ciertamente cuando el Legislador tipificó en delito (fuga especial), la omisión del confinado en volver de nuevo de donde salió (regresar el día o "en la hora indicada en el permiso"), no estableció la sutileza que la mayoría hace de que el delito sólo cubre "permisos o pases que establecen un término de regreso". (Opinión del Tribunal, pág. 17). Distinto a esa conclusión mayoritaria  –que expresamente se hace eco de la contención de la Sociedad para Asistencia Legal– un **permiso extendido** tiene, al decir mayoritario, "un término de regreso". **Ese "término de regreso" es precisamente el límite de tiempo fijado en esos permisos que genera la obligación semanal del confinado volver a la institución para reportarse, firmar y entrevistarse con el funcionario concernido**. Aún bajo la limitada óptica mayoritaria, ¿puede seriamente negarse que ello entraña unos términos "temporales"? ¿Un "regresar" al Hogar de Adaptación Social?

La obligación semanal de regresar, derrota la tesis mayoritaria de que los pases extendidos no establecen un término. Aún así, aparentemente para la mayoría, "regresar" sólo significa "ingresar", esto es, retornar y permanecer recluido de nuevo en la institución. Bajo ese enfoque mayoritario, cuando un confinado con "pase extendido" acude semanalmente a la institución, realmente no está "regresando", no está volviendo al lugar de donde salió. La nota irónica de ese

---

[12] María Moliner, <u>Diccionario de Uso del Español</u>, pág. 978; <u>Diccionario de la Lengua Española</u>, Real Academia Española, (1992), pág. 1246: <u>Diccionario Enciclopédico de Derecho Usual</u>, T. VII, 23 Ed., pág. 108.

argumento es que ciertamente los aquí peticionarios "no regresaron" por una sola razón: **se evadieron.**

Nada hay en los antecedentes de la Ley Núm. 116 que avalen semejante conclusión ni trato diferencial. Todo lo contrario. Cualesquiera dudas legítimas quedan disipadas con una lectura del **penúltimo párrafo del Art. 10** añadido por la Ley Núm. 20 del 1989,[13] mediante el cual la Asamblea Legislativa determinó que los **permisos extendidos** "a confinados que residan en sus hogares o en la comunidad... se regirán por las disposiciones de **este Artículo**...", y otras disposiciones reglamentarias "dirigidas a lograr los propósitos

---

[13] El entonces Secretario de Justicia, Lcdo. Héctor Rivera Cruz en su memorando del 19 de julio de 1989 sobre el P. del S. 467, que al otro día el Gob. Hon. Rafael Hernández Colón convirtió en la aludida Ley Núm. 20, exponía:

"Las enmiendas propuestas al inciso (b) del Artículo 5 y al **Artículo 10** de la Ley Núm. 116 de 22 de julio de 1974, según enmendada, 4 L.P.R.A. Secciones 1112 y 1136, **son de carácter aclarativo.** Si bien el Artículo 5 inciso (b)(3) faculta a la Administración a '**utilizar el método de rehabilitar en la comunidad en la mayor dimensión posible,**' no es del todo claro el que ello incluye el permitir a confinados debidamente cualificados a **pernoctar en la libre comunidad**, bajo ciertas condiciones, en programas de trabajo, estudio o de tratamiento médico, entre otros. Aunque la facultad concedida en virtud de dicho artículo es sumamente amplia, **encontramos que el Artículo 10 que trata sobre los permisos a confinados para salir de las instituciones sólo hace referencia a un Reglamento que <u>está más bien dirigido a la concesión de pases de relativamente corta duración</u>.**

La enmienda tiene el propósito de precisar con toda claridad que entre los métodos 'de rehabilitar en la comunidad' está comprendida la implantación de programas de trabajo, estudio y de tratamiento, entre otros, en la libre comunidad que <u>permitirían a un confinado debidamente cualificado a pernoctar en sus hogares o en la libre comunidad durante la duración total o parcial del programa.</u> Estos métodos estarán asimismo sujetos a los controles necesarios en consecución de la rehabilitación del confinado y cónsonos con la seguridad de la comunidad. Los criterios a utilizarse por la Administración ya están contenidos en el propio Artículo 10 sobre la concesión de permisos a confinados para salir de las instituciones por lo que <u>se adiciona un párrafo a dicho Artículo expresamente autorizando la concesión de permisos</u> a confinados para que residan en sus hogares o en la comunidad como parte de los programas contemplados de trabajo, estudio o tratamiento. Se faculta además, a la Administración para que mediante reglamentación adopte disposiciones complementarias para

del programa y **a proteger la seguridad de la comunidad"**. (Énfasis suplido).

III

En el fondo, la diferencia conceptual que la mayoría intenta hacer entre **permisos temporeros y extendidos**, basada en el límite de tiempo, es un **reductio ad absurdum**.[14] Equivale a decir que a los confinados que se les brinda un permiso temporal (salida por poco tiempo), si no regresan, cometen el delito de fuga especial; aquellos a quienes se les concede más tiempo, si no regresan en los distintos períodos semanales que deben hacerlo, no lo cometen. **Aún cuando en ambas situaciones, se evaden, ("no regresan"), unos cometen el delito; otros no.**

La mayoría reconoce que los acusados no estaban bajo el beneficio de Libertad Bajo Palabra, sino confinados que se encontraban cumpliendo su pena en un Hogar de Adaptación Social; "clientes residentes" del mismo. Sin embargo, para la mayoría sólo "regresan" los que tienen permisos temporales, no los de "pases extendidos". Se aduce que tales pases, por definición, son "de naturaleza permanente". (Opinión del Tribunal, pág. 7). Olvida así la mayoría su propia "advertencia": que esa definición depende y es así "en circunstancias normales **y siempre y cuando el convicto cumpla con la reglamentación aplicable...**" (Id.). Dicho de otro modo, la supuesta naturaleza permanente no es característica inherente de los **permisos extendidos**, sino que depende de una "circunstancia[..] normal[..]", al decir mayoritario, **"siempre y cuando el convicto cumpla con la reglamentación aplicable."** Y sabemos que esa reglamentación, rubricada taxativamente en la Ley Núm. 116 es precisamente **que acudan y se presenten semanalmente al Hogar de Adaptación, no que se evadan.** Más allá de la ficción, como cuestión de realidad, no importa la extensión del permiso ni dónde los confinados

_____

lograr los propósitos del programa y a proteger la seguridad de la comunidad." (Énfasis suplido).

[14] En la obra Black's Law Dictionary, 4ta. Ed. (1951), pág. 1444, encontramos definida la clásica frase latina **Reductio Ad Absurdum**: "In logic. The method of disproving an argument by showing that it lead to an absurd consequence". Se llama argumento **ad absurdum** "porque

duerman, ellos **regresan** al Hogar de Adaptación. Por tanto, qué duda cabe, al no regresar durante el día de la semana que les tocaba y evadirse, cometieron el delito de fuga especial.

La obligación de regresar semanalmente representaba el elemento vinculante de la medida restrictiva a la libertad (confinamiento), **a que todos estaban sometidos**. Repetimos, **la decisión mayoritaria tiene el ilógico resultado de sostener que aquellos convictos que tienen "pases temporales" de uno (1) o más días, o una o varias semanas, o uno o varios meses, si no regresan, cometen el delito de fuga; aquellos que tienen que regresar semanalmente ("pases extendidos"), si no lo hacen, no lo cometen.**

La distinción es superficial e insostenible. Lógicamente todo convicto, mientras goza de un permiso, sea "permanente o temporero" (**obviamente en ese período ninguno pernocta en el Hogar de Adaptación**), no está físicamente "recluido" en la institución; por ende, la conducta que, como elemento esencial, configura este delito de fuga especial **en ambas situaciones, es evadirse, "no regresar"** a la institución el día prefijado en cualesquiera de esos permisos.

IV

**En resumen, no está aquí envuelta transgresión alguna al <u>principio de legalidad</u> como cree la mayoría; tampoco interpretar el Art. 237 del Código Penal expositivo del Delito de Fuga <u>clásico</u>.** Estamos ante una **nueva modalidad del Delito de Fuga legislativamente diseñado para cubrir específicamente a los confinados en Hogares de Adaptación, que con permisos no regresan y se evaden.** Como prohibición penal, la sencillez, claridad y especificidad del lenguaje de los artículos 31 y 10, es lo suficientemente explícito para notificarle de antemano a los acusados cuál era la conducta vedada ("no regresar"), susceptible de ser castigada. **No era menester tener cualidades de adivino; tampoco**

---

por medio de él se conduce a quien niega la verdad de la tesis a consecuencias absurdas e inconvenientes". Jaime M. Mans Puirgarnau, <u>Lógica para Juristas</u>, Bosch (1978), pág. ___.

**estamos ante una trampa legal para incautos, sino un delito que informaba sin duda alguna lo prohibido.**

**No pequemos de ingenuos.** Ninguno ha sostenido que se encontraba en libertad por haber extinguido su condena. Conocían muy bien que estaban confinados y sujetos al sistema correccional por delitos graves. Tampoco pueden pretender ignorancia. Como reconoce la Opinión mayoritaria (Pág. 8), **fueron debidamente orientados y advertidos –suscribieron y firmaron un documento al efecto– sobre la oportunidad, beneficios y <u>obligaciones</u> que representaba acogerse al pase extendido, en particular su temporalidad, consistente del deber de regresar semanalmente a la institución para la firma y entrevista correspondiente, so pena de cometer el delito de fuga especial, tipificado en los Arts. 31 y 10.**

La interpretación judicial tiene, por naturaleza, una evolución ínsita para cada una de las distintas épocas. B.J. Cardozo, <u>La Naturaleza de la Función Judicial</u>, Buenos Aires, Ed. Aragú (1955) págs. 62–65. Proponemos la interpretación más sensata y justa que revela el historial, espíritu y texto prístino de este Delito de Fuga **especial**. Al resolver lo contrario, la mayoría pasa por alto que los estatutos penales siempre deben interpretarse conforme la intención legislativa, a la luz de las realidades sociales de donde surgen y operan. <u>Pueblo</u> v. <u>Ríos Dávila</u>, <u>supra</u>; <u>Pueblo</u> v. <u>Batista Montañez</u>, 113 D.P.R. 307, 313 (1982).

Anular **retroactivamente todas las sentencias** y dejar sin castigo a los numerosos confinados que con **pases extendidos** se han evadido y, únicamente penalizar a quienes con **permiso temporero** incurren en **igual conducta,** ¿contribuye a su rehabilitación? ¿Protege la seguridad de la comunidad? ¿Reivindica y fortalece la tan necesaria autoridad del sistema correccional? Vía la interpretación mayoritaria, ¿podemos atribuirle a la Asamblea Legislativa el **<u>brutum fulmen</u>** de castigar solamente a los confinados que con **permisos temporeros** se evaden? ¿Dejar "sin dientes" la ley?

Contestamos en la negativa. Desde el estrado, siempre es más fácil una interpretación libérrima, aunque conduzca a resultados absurdos. Pacheco v. Vargas, Alcaide, supra, 409.


ANTONIO S. NEGRÓN GARCÍA
Juez Asociado