EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Sara Cortés, *et al.*<br><br>Peticionarios<br><br>v.<br><br>Wesleyan Academy, *et al.*<br><br>Recurridos | Certiorari<br><br>2015 TSPR 40<br><br>192 DPR ____ |

Número del Caso:   CC-2014-77


Fecha: 14 de abril de 2015



Materia: Resolución con Votos



Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Sara Cortés, *et al.*<br><br>    Peticionarios<br><br>        v.<br><br>Wesleyan Academy, *et al.*<br><br>    Recurridos | CC-2014-0077 |

RESOLUCIÓN

San Juan, Puerto Rico, a 14 de abril de 2015

Examinada la *Petición de Certiorari*, presentada por la parte peticionaria en el caso de epígrafe, se provee no ha lugar.

Lo acordó el Tribunal y certifica la Secretaria del Tribunal Supremo. La Juez Asociada señora Rodríguez Rodríguez emitió un Voto Particular Disidente al que se une la Jueza Presidenta señora Fiol Matta y la Jueza Asociada Oronoz Rodríguez. El Juez Asociado señor Martínez Torres hace constar la siguiente expresión a la que se une la Jueza Asociada señora Pabón Charneco y el Juez Asociado señor Feliberti Cintrón:

> "Como la revisión es contra el resultado y no contra los fundamentos del dictamen del Tribunal de Apelaciones, voto conforme con proveer no ha lugar al recurso. La demanda presentada carece de una causa válida, pues las alegaciones no configuran una violación de contrato ni una privación de derechos del menor involucrado, sino el ejercicio válido de disciplina de las autoridades de un colegio privado. Estas prefirieron imponer una sanción disciplinaria al estudiante, a pesar de que pudieron haberlo expulsado después de adjudicar que este desparramó una botella de orín en el armario ("locker") de una compañera de estudios. Como las escuelas –religiosas o no- tienen discreción para adoptar e implementar normas para disciplinar a los estudiantes que ellas determinen que abusaron de otros ("bullies"), las alegaciones no presentan una causa de acción contra este colegio. Regla 10.2(5) de Procedimiento Civil, 32 LPRA Ap. V."

El Juez Asociado señor Rivera García emitió un Voto Particular de Conformidad al que se une el Juez Asociado señor Kolthoff Caraballo. El Juez Asociado señor Estrella Martínez está inhibido.


                    Aida Ileana Oquendo Graulau
                    Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Sara Cortés, *et al.*

    Peticionaria

      v.                    CC 2014-0077

Wesleyan Academy, *et al.*

    Recurridos


Voto Particular de Conformidad emitido por el Juez Asociado señor Rivera García al cual se une el Juez Asociado señor Kolthoff Caraballo


En San Juan, Puerto Rico, a 14 de abril de 2015.

Ante situaciones que amenacen los intereses, el bienestar o la seguridad de los menores de edad, no hay duda de que los tribunales tienen el deber insoslayable de actuar de manera diligente dentro del marco legal aplicable, **independientemente de si en el caso particular está involucrada alguna institución religiosa**. En ese contexto, este Tribunal, como máxima autoridad del Poder Judicial, debe asegurarse de que nuestros tribunales y funcionarios no incurran en actuaciones contrarias a esa responsabilidad de proteger a nuestras niñas y niños. Precisamente

por ello, presto particular atención y cuidado a aquellos casos cuyo eje central es un menor de edad y siempre he mostrado disposición a avalar normativas jurídicas que promuevan sus mejores intereses.[1] Es dentro de ese marco de referencia que hoy expreso mi conformidad y anuencia con la Resolución que antecede, porque entiendo que es correcto el **resultado** desestimatorio alcanzado por el Tribunal de Apelaciones, indistintamente de si coincido o no con sus fundamentos sobre la presunta falta de jurisdicción sobre la materia.[2]

En ese contexto, para fines de nuestra evaluación sobre si expedimos un recurso, no entra en consideración el hecho de que una de las partes sea una institución religiosa, porque al final del día eso **no** determina si nuestros tribunales, o este Tribunal en última instancia, pueden evaluar determinado recurso judicial. Ante la presentación de cualquier caso en nuestros tribunales, lo

---

[1] Véase, e.g., Rivera Serrano v. Mun. Autónomo de Guaynabo, 2014 TSPR 118, 191 DPR __ (2014), caso en que favorecimos la continuación de una demanda de daños y perjuicios instada en representación de un menor y en el que reiteramos que cualquier conflicto que un tribunal perciba entre intereses ajenos y los de un menor de edad, se debe resolver a favor de este, aun cuando ello conlleve interponer tales intereses por encima de los intereses del Estado.

[2] En innumerables ocasiones, este Tribunal ha expresado que nuestra revisión como último Foro Judicial debe ser sobre la sentencia o el resultado y no sobre los fundamentos. Asociación de Pescadores de Punta de Figueroa, Inc. v. Marina del Puerto del Rey, Inc., 155 DPR 906, 920 (2001); Pueblo v. González Vega, 147 DPR 692, 702 (1999); Sánchez v. Eastern Air Lines, Inc., 114 DPR 691, 695 (1983); Collado v. E.L.A., 98 DPR 111, 114 (1969); Rodríguez v. Serra, 90 DPR 776, 777 (1964); Corrada v. Asamblea Municipal de Morovis, 79 DPR 36, 370 (1956); Sucesión Nieves v. Sucesión Sánchez, 17 DPR 872, 875 (1911). En otros términos, si nos encontramos ante una petición de *certiorari* y entendemos que el resultado alcanzado por el Tribunal de Apelaciones es correcto, independientemente de si los fundamentos que utilizó para alcanzarlo son incorrectos, nuestra discreción debe movernos a denegar el recurso peticionado.

que procede es evaluar sus hechos particulares y determinar si hay una causa de acción válida que permita la concesión de un remedio, y como consecuencia, la continuación del pleito. Por lo tanto, si los tribunales no se encuentran ante ese escenario lo que procede es la desestimación del caso.

El caso de epígrafe se originó en el 2007 cuando el entonces menor de edad E.D.C. fue disciplinado por la Academia Wesleyan porque presuntamente incurrió en actos de acoso escolar o "bullying" al recolectar y fermentar orín y esparcirlo sobre las pertenencias de otra estudiante menor que él. A raíz de esos hechos, los padres del menor presentaron una demanda en daños y perjuicios por presunto incumplimiento de contrato y violación de los derechos de E.D.C. Luego de varios trámites, el Tribunal de Apelaciones revocó al Tribunal de Primera Instancia y ordenó la desestimación del caso. Así las cosas, la parte demandante acudió ante esta Curia mediante una petición de *certiorari*.

Ante ese petitorio, y conforme al esquema explicado anteriormente concerniente a la adjudicación judicial aplicable a nivel apelativo en la revisión de los dictámenes recurridos, mi evaluación inicial estaba dirigida a determinar si estaba de acuerdo con el **resultado** alcanzado por el Tribunal de Apelaciones, **independientemente de los fundamentos que el tribunal esbozó en su sentencia**. Así que, luego de evaluar con sumo

detenimiento el recurso presentado y todos los documentos incluidos (sentencias, demanda, demanda enmendada, etc.), concluí que sí procedía la desestimación del mismo. Esto porque la parte demandante no logró demostrar ni tan siquiera inicial y preliminarmente que, en efecto, contaba con una causa de acción válida que ameritara la continuación del pleito. Por lo tanto, en ejercicio de mi criterio judicial, no hallé razón para expedir el recurso peticionado.

Ante ese ejercicio tan básico y común para los miembros de esta Curia, resulta "sorpresivo" que la distinguida compañera Juez Asociada señora Rodríguez Rodríguez gaste papel y tinta exponiendo por qué el **fundamento** utilizado por el Tribunal de Apelaciones es incorrecto. En ese sentido, sus expresiones no tan solo resultan inaplicables, sino totalmente forzadas como si quisiera expresar su incomodidad con *otras* situaciones recientes que nada tienen que ver con los méritos del presente caso. Después de todo, ¿qué relación guarda la denegatoria que hoy certificamos con nuestro deber de "proyectar siempre, con nuestras acciones y nuestras expresiones públicas, imparcialidad, ecuanimidad y total ausencia de abanderamientos", de manera que no nos comprometamos "con los contenidos de una creencia religiosa"?[3] Ciertamente, la compañera Juez Asociada falla en brindarnos una explicación lógica, clara y coherente

---

[3] Véase, Voto Particular Disidente de la Juez Asociada señora Rodríguez Rodríguez, pág. 5.

sobre el particular. La disposición de este caso para efectos de este Tribunal, no tiene relación alguna con el hecho de que haya una institución religiosa involucrada. En ese sentido, nadie debe tener duda de que las puertas de los tribunales están abiertas para todo ciudadano o entidad que entienda que sus derechos han sido violentados, independientemente esté envuelta una entidad religiosa.

Por último, debo reseñar brevemente parte del trámite interno del presente caso a fin de ilustrar el procesamiento atípico que ha llevado a las partes a esperar más de **diez meses** para conocer de la expedición o denegatoria del mismo. El 23 de mayo de 2014, celebramos una reunión de Sala de Despacho compuesta por cuatro miembros de este Tribunal.[4] En aquella ocasión, según surge de la Minuta, la Juez Asociada señora Rodríguez Rodríguez, quien fungía como Presidenta y tenía este caso asignado, informó sobre el mismo y recomendó su expedición. No obstante, tanto el Juez Asociado señor Kolthoff Caraballo como este Juez Asociado señor Rivera García votamos para denegar el recurso. Mientras, el Juez Asociado señor Estrella Martínez informó que estaba inhibido. Siendo así, el recurso fue denegado en votación 2-1 y le correspondía a la compañera Juez Asociada emitir y certificar la

---

[4] En el caso de autos, debido al retiro del Juez Presidente señor Hernández Denton y durante el tiempo en que estuvo la vacante, se alteró la composición de las salas de despacho constituyéndose dos salas de cuatro jueces y juezas cada una. Véase In re: Integración Salas De Despacho, 190 DPR 978 (2014).

correspondiente Resolución.[5] Empero, no es hasta el 1 de diciembre de 2014, seis meses después de la votación, que la Juez Asociada señora Rodríguez Rodríguez circula un voto particular disidente junto con la Resolución denegatoria de la Sala.

No conforme con ello, la compañera Juez Asociada ignora el procedimiento establecido en el Reglamento de este Tribunal y circula su voto particular para la consideración de todos los miembros de esta Curia, aun cuando una Sala de Despacho no había recomendado su expedición. Así las cosas, el Pleno optó por intervenir en la evaluación sobre si expedíamos o no el presente caso y determinó por mayoría de votos que no procedía su expedición. Luego de esa negativa, la Juez Asociada señora Rodríguez Rodríguez esperó alrededor de dos meses adicionales para circular un nuevo voto particular disidente.

---

[5] Como es sabido, el Reglamento del Tribunal Supremo dispone la forma en que este Tribunal acogerá los asuntos que llegan ante nuestra consideración. Específicamente, la Regla 4 dispone cómo ha de regir el funcionamiento de las Salas de Despacho. In re: Salas De Despacho 184 DPR 510 (2012). Así, el referido Reglamento establece que para recomendar la expedición de un auto se requerirán los votos de por lo menos la mitad de los Jueces o las Juezas que intervengan. *Íd*. Es decir, en una sala compuesta por tres jueces, se puede recomendar la expedición de un recurso siempre que haya al menos dos votos. De lo contrario, se declarará no ha lugar, en cuyo caso el Juez o la Jueza a quien le fue asignado el caso emitirá una Resolución que haga constar la decisión tomada. Ahora bien, cuando la mayoría de los miembros que componen la Sala de Despacho proveen no ha lugar al recurso, en una posterior solicitud de reconsideración podrá ser atendido por una Sala de Despacho distinta para que el mismo sea evaluado por otros jueces. De esta manera, todo el Pleno tendrá la oportunidad de examinar y ponderar los argumentos de las partes para así disponer del recurso.

Como se recordará, en In re: Solicitud Aumentar Núm. Jueces TS, 180 DPR 54 (2010), solicitamos a la Asamblea Legislativa que promulgara una ley para aumentar a nueve el número de jueces miembros de este Tribunal Supremo. El propósito de tal solicitud se debió a la auténtica preocupación que tenía este Tribunal por la demora que enfrentaban los casos en calendario. En consecuencia, la Asamblea Legislativa accedió a nuestra petición y tras entrar en vigor el Reglamento enmendado se organizaron las salas de despacho con el fin último de atender con mayor agilidad y eficiencia los recursos presentados ante nos.

Ciertamente, la acción tomada por la Juez Asociada señora Rodríguez Rodríguez de retener el recurso y la Resolución para disponer de él por tanto tiempo no coincide con el propósito de la creación de las Salas de Despacho. Por el contrario, incide con el adecuado y buen funcionamiento de las Salas y el objetivo primordial de atender los asuntos que llegan ante nos con la premura que merecen. Es inaceptable que algunos miembros de esta Curia continúen con la vieja práctica de mantener aguantando los recursos ante nuestra consideración sin razón válida alguna, exponiendo a las partes a dilaciones y gastos innecesarios.

Indudablemente, no cuestiono la facultad de la compañera Juez Asociada para expresar en un voto particular disidente sus razones para expedir el recurso solicitado. Sin embargo, ese proceder no debe conllevar un

atraso en la disposición de los recursos ante nuestra consideración, contrario a los claros objetivos de nuestro funcionamiento en salas de despacho. Máxime, cuando al final se circulan expresiones disidentes cuyo contenido no tan solo se distancia de las normas básicas de revisión, sino que tienen el único objetivo de funcionar cuan comunicado de prensa en ánimo de expresar su incomodidad con acontecimientos recientes **no** relacionados con los méritos del caso de epígrafe.


                                        Edgardo Rivera García
                                           Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Sara Cortés, *et al.*<br><br>    Peticionarios<br><br>        v.<br><br>Wesleyan Academy, *et al.*<br><br>    Recurridos | CC-2014-0077 |

Voto Particular Disidente emitido por la Juez Asociada señora Rodríguez Rodríguez al que se une la Jueza Presidenta señora Fiol Matta y la Jueza Asociada Oronoz Rodríguez

San Juan, Puerto Rico, a 14 de abril de 2015.

La mayoría de este Tribunal se niega a revisar una controversia de índole religiosa en la cual los foros de instancia, mediante una lectura errónea de la libertad de culto de una institución religiosa, la anteponen sobre un reclamo en protección de menores. En esta ocasión, una entidad educativa religiosa cuestionó, con éxito, al amparo de las cláusulas de libertad de culto y de separación de iglesia y estado, la **jurisdicción sobre la materia** de los tribunales para adjudicar una demanda de daños y perjuicios e incumplimiento contractual. En específico, en la demanda se solicitó un remedio por los daños y perjuicios ocasionados por la entidad religiosa por el castigo que le impuso a un estudiante menor de edad –hijo de los demandantes– y por la publicidad de los

hechos a la comunidad escolar en alegada violación al derecho a la privacidad del menor, según pactado mediante un acuerdo de confidencialidad contractual.

En Puerto Rico, de ordinario, y por razón de un sistema judicial unificado, los tribunales tienen jurisdicción o autoridad para atender todas las controversias que surjan dentro de nuestros linderos territoriales. Por tanto, cuando se cuestiona la intervención de un tribunal por razón de una violación a las cláusulas de separación de iglesia y Estado, no cabe discutir la falta de jurisdicción sobre la materia de los tribunales. Es decir, cuando un tribunal tiene ante sí una controversia que versa sobre asuntos religiosos, no se trata de la falta de autoridad del foro judicial para atender la controversia, pues de ordinario la tiene. En todo caso, como bien resolvió el Tribunal Supremo de Estados Unidos sobre un asunto similar en *Hosanna-Tabor Evangelical Lutheran Church and School v. EEOC.,* 132 S. Ct. 694 (2012), lo que procede es evaluar si los límites constitucionales impiden que se justifique la concesión del remedio solicitado, pues su concesión violaría las cláusulas de separación de iglesia y Estado.

En este caso, sin duda, las cláusulas de separación de iglesia y Estado no impiden que, en su día, un tribunal pueda conceder el remedio solicitado por la parte demandante si a la luz de los hechos y del Derecho aplicable tal remedio procede. Esto es, las cláusulas de

separación de iglesia y Estado no impiden que un tribunal pueda conceder un remedio (1) si una entidad educativa religiosa ocasionó daños y perjuicios en la imposición de medidas disciplinarias a un estudiante, y (2) si la entidad educativa religiosa incumplió con un contrato. Estimo que procede, entonces, expedir el recurso de *certiorari* ante nuestra consideración, revocar la determinación del foro apelativo intermedio y ordenar la continuación de los procedimientos ante el foro primario.[6]

Nuestra función como intérpretes de nuestra Constitución es hacer valer el contenido de cada una de las cláusulas que la componen. Si bien las tres cláusulas constitucionales que contemplan la libertad de culto, la separación de iglesia y Estado y la prohibición al establecimiento de una religión tradicionalmente han sido denominadas "cláusulas religiosas", entendemos que esa terminología no atiende la verdadera naturaleza de estas disposiciones constitucionales. Así, hemos decidido referirnos a estas tres cláusulas en conjunto como las cláusulas de separación de iglesia y Estado, partiendo de la premisa que el principio detrás de estas normas es precisamente, y tal como dispone nuestra Constitución, la completa separación de iglesia y Estado. Por tanto, ha de ser este principio, ponderado en función de las demás

---

[6] Adviértase que en esta etapa de los procedimientos lo único que nos corresponde determinar es si en nuestro ordenamiento los ciudadanos pueden acudir ante un tribunal de derecho para ventilar controversias de daños y perjuicios e incumplimiento contractual en contra de una entidad religiosa sobre asuntos seculares.

pautas axiológicas que contiene nuestra Constitución, y respetando los mínimos irreductibles que supone el Derecho Constitucional federal, el que guíe la aplicación de las cláusulas de libertad de culto y de prohibición al establecimiento de una religión. Ello, sin embargo, no ha de ser óbice para que este Tribunal, en el descargo de sus prerrogativas judiciales, se dé a la tarea de darle contenido normativo puntual al principio de separación de iglesia y Estado. Justamente, el caso que nos ocupa presenta una oportunidad idónea, y posiblemente desperdiciada, para ello.[7]

Nuestra responsabilidad constitucional nos obliga a respetar toda creencia religiosa y nos veda la incentivación de alguna en particular. En otras palabras, el respeto a las provisiones constitucionales se traduce en que garanticemos la libertad de cada cual para escoger las creencias religiosas que desea profesar, si alguna. Lo que no podemos hacer es garantizar solo aquellas creencias que puedan ser las nuestras. Es precisamente para alcanzar ese ideal, que es imprescindible el reconocimiento de una estricta separación entre la iglesia y el Estado.

---

[7] Para una elocuente y breve exposición conceptual en torno a las diferencias cualitativas entre principios y normas, en el ámbito del Derecho, véase Robert Alexy, *Sistema jurídico, principios jurídicos y razón práctica*, 5 DOXA 139 (1988)(Manuel Atienza, trad.)(disponible en http://www.biblioteca.org.ar /libros/141737.pdf) (última visita, 12 de abril de 2015).

La completa separación entre la iglesia y el Estado es lo que permite garantizar el debido respeto a todas las religiones y a todos sus creyentes; solo así podemos cerciorarnos de que ninguna religión sea superior que otra, en perjuicio de aquéllas que no gozan del sitial privilegiado; solo de esta manera garantizamos que el trato que reciben del Estado será de carácter imparcial e igualitario; solo de esta manera se concilian las diferencias marcadas entre unas creencias y otras propiciando así, la paz social; solo de esta manera se respeta y valora la pluralidad, la individualidad y la libertad de conciencia de cada cual, valores de la esencia de toda sociedad que se precie democrática. Abrazar una creencia religiosa en particular, supone irremisiblemente la lesión de los derechos de libertad culto y de conciencia de los ciudadanos que no participan del credo que el poder público se dedica a incentivar.

En esa tarea debemos proyectar siempre, con nuestras acciones y nuestras expresiones públicas, imparcialidad, ecuanimidad y total ausencia de abanderamientos. Como indiqué, al poder público le está vedado comprometerse con los contenidos de una creencia religiosa. A fin de cuentas, al asumir el cargo, juramos defender la Constitución del Estado Libre Asociado de Puerto Rico contra todo enemigo interior o exterior; no juramos defender o adelantar los postulados que se recogen en el Corán, o en la Biblia, o en la Torá o el Talmud, el Rig

Veda o el Baghabad Ghita o el Tipitaka.  Todas las creencias religiosas merecen igual trato y respeto, igualmente merecen respeto e igual trato aquéllos que no profesan ninguna.  Hacer lo contrario, es decir, colocar en superior jerarquía alguna creencia en particular, pone en tela de juicio nuestra imparcialidad institucional y lacera irremediablemente la función adjudicadora de este Tribunal.

Porque en esto creo, disiento.


Anabelle Rodríguez Rodríguez
Juez Asociada